Argued and submitted May 8, affirmed December 20, 1995

STATE OF OREGON,
*Appellant,*

*v.*

WILLIAM KREUTZER,
*Respondent.*

(941268; CA A85823 (Control))

STATE OF OREGON,
*Appellant,*

*v.*

LINDA KREUTZER,
*Respondent.*

(941269; CA A85824)

909 P2d 175

Douglas F. Zier, Assistant Attorney General, argued the cause for appellant in each case. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Scott A. Miller argued the cause for respondent in each case. With him on the brief were Thomas G. Hansen; Law

Offices of Thomas G. Hansen, Robert W. Connell and Connell & Swenson.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

De MUNIZ, J.

## De MUNIZ, J.

In these consolidated cases, defendants William and Linda Kreutzer were charged with manufacture of a controlled substance, ORS 475.992(1), possession of a controlled substance, ORS 475.992(4), child neglect in the first degree, ORS 163.547, and endangering the welfare of a minor, ORS 163.575. The state appeals the trial court's order granting defendants' motion to suppress evidence seized pursuant to a search warrant. We affirm.

The affiant, an officer with the Lincoln County Sheriff's Department, filed an affidavit detailing his training and experience in narcotics identification and investigation. His affidavit states that, on January 13, 1994, he talked with a concerned citizen (CC1), who gave a name and address but wanted to remain confidential. CC1 told the affiant that CC1 had been inside defendants' house within the past year and had seen marijuana growing in the basement and on the top floor.

The pertinent portion of the affidavit states:

"The CC #1 told me that the CC #1 had been told by [daughter], a teenage daughter of WILLIAM and LINDA KREUTZER, that the plants that the CC #1 had seen were marijuana plants and the plants belong to [daughter's] father — WILLIAM KREUTZER.

"The CC #1 also told me that CC #1 was told by numerous other students that [daughter] has been selling marijuana at the Taft High School. CC #1 told me that [daughter] is a student at Taft High School. LINT Detective Steve McBane confirmed by independent investigation that [daughter] is a student at Taft High School.

"The CC #1 drew me an interior diagram of the KREUTZER residence as described in paragraph #3 above and it shows two different locations where the CC #1 had seen the marijuana plants growing in the upper floor and in the basement. Also shown in the diagram on the second floor is a wood stove used as a source of heat in the residence.

"I was able to verify, by independent investigation, that BILL and LINDA KREUTZER live at 2515 S. Schooner Creek Road as described in paragraph #3 above and that BILL and LINDA have a daughter * * * who is about fifteen years old, and is a student at Taft High School in Lincoln County OR.

"I went to the Assessor's office and by checking records found that there is 1160 square feet of heated space at the KREUTZER residence which is more fully described in paragraph #3 above. The residence is heated by base board electric heat and a wood stove on the second floor (living area). There is 832 square feet of unheated space in the basement which has a dirt floor."

The affiant confirmed "by independent investigation" the name and address of CC1 and that CC1 had no criminal record. By "independent investigation" he also confirmed that defendants lived at the address given by CC1 and have a daughter who is a student at Taft High School. He stated that another officer, McBane, also confirmed "by independent investigation" that defendants' daughter attends Taft High School. The affiant went to the assessor's office and, from checking records, found that defendants' house has 1,160 square feet of space heated by electric baseboards and a wood stove, and an unheated space in the basement.

The affiant talked to a second concerned citizen (CC2), who

"gave me CC #2's name and address and I have checked and confirmed that CC #2 lives where CC #2 told me and I have checked and found no record of criminal history on CC #2.

"CC #2 wishes not to be named because of the fear of retribution by the Kreutzer's.

"CC #2 told me that in the past three weeks CC #2 had been next to WILLIAM KREUTZER, and that WILLIAM KREUTZER had a strong smell of burnt marijuana about his person.

"CC #2 advised me that CC #2 knows what burnt marijuana smells like because CC #2 has been present when other people have been smoking what was identified by the person smoking as being marijuana."

The affiant further stated that, in 1993, McBane told him that another concerned citizen (CC3) told McBane that defendants were growing marijuana at their residence and that defendants' daughter was dealing marijuana at Taft High School. He also stated that, on February 23, 1994, Deputy Landers advised him that Landers was contacted about six months earlier by a concerned parent (CC4), whose name and address were verified. CC4 told Landers that CC4's

teenage daughter told CC4 that she knows defendants' daughter, that defendants are growing marijuana and that defendants' daughter was dealing marijuana at Taft High School.

Finally, the affiant stated that he had obtained defendants' electric power records and had constructed a table setting forth the power usage on a monthly basis from January 1991 until February 1994. The affiant showed the power records to other members of the Lincoln Interagency Narcotics Team (LINT), one of whom showed the affiant that, starting in August 1993 through December 1993, the kilowatt hours increased "from 500 to 1000" in comparison with the same months in 1991 and 1992. On the basis of that, and on the increased power usage in 1994 compared to 1993, the affiant concluded "that the Marijuana grow is still in operation" and, on the basis of his training and experience, that the affiant knew "that the power usage shown above is excessive for the size of [defendants'] house, also that heat in a house consumes the most power and this house has a wood stove."

The court excised most of the information provided by the CCs because the affiant had "failed to set forth facts bearing on the unnamed informants' reliability, or basis upon which claimed reliability has been established, and because the affiant failed to disclose the means by which the information obtained was verified," as required by ORS 133.545(4).[1] CC1 and CC2 both related information about marijuana. The trial court excised that information because the affidavit failed to describe the basis of the informants' knowledge about marijuana. The court concluded that the remaining information was not sufficient for the issuing magistrate to find probable cause to issue the warrant.

■ Under ORS 133.545(4), when the information is provided by an unnamed informant, the requirement that the

---

[1] ORS 133.545(4) provides that an application for a warrant supported by an affidavit

"shall consist of a proposed warrant in conformance with ORS 133.565, and shall be supported by one or more affidavits particularly setting forth the facts and circumstances tending to show that the objects of the search are in the places, or in the possession of the individuals, to be searched. If an affidavit is based in whole or in part on hearsay, the affiant shall set forth facts bearing on any unnamed informant's reliability and shall disclose, as far as possible, the means by which the information was obtained."

affidavit establish the informant's reliability may be met by facts showing that the informant is credible or facts showing that the information provided by the informant is reliable. *State v. Alvarez*, 308 Or 143, 147, 776 P2d 1283 (1989). Reliability may be shown by circumstances that assure that the particular information is trustworthy. *Id.*

■■ The state argues that the affidavit shows that the information is reliable. The state contends that, when the informant is not criminally involved and appears to be without ulterior motives, a less searching reliability analysis is needed and may be established by corroboration. *State v. Prince*, 93 Or App 106, 760 P2d 1356, *rev den* 307 Or 246 (1988). The state argues that the affiant corroborated CC1's report of where defendants lived, that defendants had a teenage daughter who attended Taft High School, and that defendants' home had a basement and a wood stove on the second floor. We agree that the information, although without connection to criminal activity, was nonetheless relevant to the reliability of the information. *See State v. Brotherton*, 123 Or App 243, 247, 859 P2d 565 (1993). The state also contends that the affiant learned that the residence had a trend of higher electric use during the time that the informant reported observing the marijuana grow operation, although the affidavit contained no information from which to evaluate a "normal" consumption. *See State v. Milks/ Sales*, 127 Or App 397, 403, 872 P2d 988 (1994). Nonetheless, even assuming that the electric consumption provides some indication of reliability, which we can consider along with corroborated information, we agree with the trial court that the affidavit failed to show probable cause to believe that seizable items would be found at defendants' residence.

The affidavit does not describe how, or on what basis, CC1 concluded that the plants seen by CC1 were marijuana. The affidavit does not, for example, state that CC1 had any experience with marijuana or was familiar with its appearance. *Compare State v. Spriggs*, 137 Or App 601, 905 P2d 263 (1995) (informant had used marijuana, had seen marijuana plants before and could identify them). Nor did CC1 describe the sort of paraphernalia ordinarily associated with an indoor marijuana grow operation or the number of plants seen. The affidavit does state that defendants' daughter told CC1 that

the plants were marijuana, but does not describe the daughter's experience or familiarity, if any, with marijuana.

The state argues, however, that CC1's statements pertaining to marijuana are reliable. It relies on *State v. Horwedel*, 66 Or App 400, 674 P2d 623, *rev den* 296 Or 638 (1984), and *State v. Mellinger*, 52 Or App 21, 627 P2d 897 (1981). Both cases are materially distinguishable.

In *Horwedel*, the affidavit recited that an unnamed informant had seen opium in the defendant's house. The affidavit did not describe how the informant determined that the substance was opium, but did include the following averments:

" 'I know the said informant to be familiar with narcotics and dangerous drugs because:

" '1.   Said informant has been in the drug culture for approximately ten (10) years, and has witnessed the sale and use of numerous narcotic drugs on hundreds of occasions. The said informant is completely familiar with the appearance of most illicit drugs.

" '* * * * *

" 'I know the said informant to be reliable because:

" '* * * * *

" '2.   The informant has provided affiant with information regarding users and sellers of marijuana, heroin, and other dangerous drugs, which I know from my experience to be true, but which the informant could not and did not know I knew.

" '* * * * *

" '4.   Information from the informant has resulted in the execution of three Search Warrants and seizure of narcotics on all three occasions[.]' " 66 Or App at 403-04.

Despite these averments, the trial court granted suppression of opium seized pursuant to a search warrant, concluding that the affidavit failed to establish probable cause to believe that opium would be found on the premises to be searched. We reversed. In so holding, we rejected the defendant's argument that the affidavit did not adequately demonstrate the informant's reliability in that "it provides no specific information as to the informant's familiarity with the appearance of opium." We concluded:

"It is not necessary that an affiant describe the informant's familiarity with the specific drug at issue. * * *

"The facts supplied regarding the informant's knowledge of controlled substances and his proven reliability in providing information leading to arrests regarding a variety of controlled substances provided sufficient information for a judge to conclude that the informant was reliable and that his information was credible." *Id.* at 404.

Similarly, in *Mellinger*, the defendant argued that a search warrant affidavit, which stated that a confidential reliable informant had observed marijuana at the defendant's home, was inadequate because it did not recite the bases for the informant's ability to identify marijuana. The trial court rejected that argument, and we affirmed:

"In the present case, the affiant stated that the informant had previously provided reliable information leading to arrests, including crimes involving controlled substances. The reliability of the informant may be established by recital of facts that show he has previously proven reliable. * * * [T]he fact that the informant had previously provided information about controlled substances establishes the informant's ability to identify such substances." 52 Or App at 25-26 (citations omitted).

Thus, in *Mellinger*, as in *Horwedel*, the affidavit's generalized averments describing the informant's involvement in other drug transactions, investigations, or prosecutions supported and permitted the inference of familiarity with drugs and, thus, of reliability.

Here, there is no indication in the affidavit that CC1 had ever before provided information, much less reliable information, to the police in drug cases or otherwise. Consequently, there is no basis for the sort of circumstantial inference that bridged the evidentiary gap in *Horwedel* and *Mellinger*.

Thus, the state's position reduces to the proposition that, given the pervasiveness of drugs in our culture, a disinterested informant's statement that he or she has seen drugs is innately reliable. We disagree. Many in our society cannot distinguish marijuana plants from other vegetation. In all events, "common knowledge" concerning the appearance of marijuana is hardly judicially noticeable, *see* OEC

201(b),[2] and the state adduced no evidence substantiating such knowledge. *Cf. State v. Lichty*, 313 Or 579, 585, 835 P2d 904 (1992) (noting that the state had introduced evidence "that members of society have a general knowledge regarding the appearance of cocaine" including informant's testimony that she was familiar with the appearance of cocaine from "[w]atching the news, [and] watching t.v. programs").

■■      We also conclude that the information provided by CCs 3 and 4[3] cannot be used to provide cross-corroboration for the reliability of the information provided by CC1. The information provided by CCs 3 and 4 was information reported to the affiant through other officers. When information is provided by a secondary source, each level of hearsay must be examined to determine if the basis of knowledge and reliability is satisfied. *State v. Binner*, 128 Or App 639, 647 n 2, 877 P2d 642, *rev den* 320 Or 325 (1994). CCs 3 and 4 do not meet that requirement. CC3 told McBane that defendants were growing marijuana at their residence and that their daughter was dealing marijuana at Taft, but there is nothing to show either the basis of CC3's knowledge or the reliability of the information. While the basis of the knowledge of CC4 was his daughter, there is nothing to show the reliability of *her* information.

■      It is true that in *Prince*, 93 Or App at 111, we stated that "[c]ross-corroboration among informants is a well-accepted method of demonstrating the validity of the information given." However, that statement does not negate the requirement that hearsay statements must be shown to have been provided by a credible source. *See State v. Henderson*, 40 Or App 27, 31, 594 P2d 419 (1979) (There must be satisfactory proof of the credibility of every person involved in the chain of information from the initial observer to the affiant.). In *Prince*, the informants each individually gave the police

---

[2] OEC 201(b) provides:

"A judicially noticed fact must be one not subject to reasonable dispute in that it is either:

"(1)   Generally known within the territorial jurisdiction of the trial court; or

"(2)   Capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

[3] CC2 did not provide cross-corroboration.

similar information based on their personal observations. That case does not stand for the proposition that information from an informant who is not shown to be credible can, nonetheless, be used to bolster the reliability of another informant's information. To so hold would allow reliability to be established through a showing that the information was internally consistent within the affidavit. That is contrary to the requirements of ORS 133.545(4).

The affidavit did not demonstrate the reliability of CC1's identification of marijuana plants in defendants' home. Because the affidavit did not demonstrate probable cause, the trial court did not err in allowing defendants' motion to suppress.

Affirmed.