Argued and submitted April 29, reversed and remanded August 25, petition for review denied December 9, 2010 (349 Or 370)

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

LOUIS B. DUARTE,
*Defendant-Respondent.*

Sherman County Circuit Court
070025CR; A138537 (Control)

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

TATIA KNULL-DUNAGAN,
nka Tatia Dunagan,
*Defendant-Respondent.*

Sherman County Circuit Court
070026CR; A138538

238 P3d 411

Rolf Moan, Assistant Attorney General, argued the cause for appellant. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Robert M. Atkinson, Assistant Attorney General.

Kristin A. Carveth, Deputy Public Defender, argued the cause for respondents. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Edmonds, Senior Judge.

HASELTON, P. J.

## HASELTON, P. J.

The state appeals, under ORS 138.060(1)(c), from orders suppressing evidence of a residential marijuana growing operation discovered as a result of a search pursuant to a warrant. The trial court determined that the affidavit in support of the warrant did not establish probable cause to search because it failed to corroborate the reliability of an anonymous informant. Consistently with the standard of review prescribed and amplified in *State v. Castilleja*, 345 Or 255, 264-66, 192 P3d 1283, *adh'd to on recons*, 345 Or 473, 198 P3d 937 (2008), we conclude that the issuing magistrate could properly have concluded that the affidavit established probable cause to search defendants' home—and, particularly, that the affidavit, construed in a common-sense manner, sufficiently corroborated the reliability of the informant's statements. Accordingly, we reverse and remand.

The facts material to our review are undisputed. On June 22, 2007, Oregon State Police Detective Raiser executed an affidavit in support of an application to search defendants' home in Sherman County for evidence of an indoor marijuana growing operation. Raiser began by reciting his extensive training and experience in drug enforcement efforts, including his knowledge pertaining to marijuana growing operations. As part of that description, Raiser averred that marijuana "can be cultivated in an indoor environment in a hydroponic setting," *i.e.*, that "the plant is grown in a solution of water and nutrients and is not planted in soil," and that, "[w]hen growing marijuana inside, power consumption increases dramatically." Raiser also stated, based on his knowledge and experience, that persons growing marijuana often "maintain a continuous supply of plants * * * [to] provide[ ] an ongoing and uninterrupted source of marijuana for harvest and sale"; that the "odor of fresh growing and/or cut marijuana is distinctive and is easily recognized"; and that persons involved in "marijuana grow operations oftentimes make structural modifications to the areas of buildings where marijuana is being grown."

Raiser then recounted the content of three communications that law enforcement personnel had received from

one or more unidentified informants,[1] who alleged that there was an illegal marijuana growing operation at defendants' residence. In the first instance, on June 12, 2007, a male caller contacted the Mid-Columbia Narcotics Team telephone tip line and stated that there was an active hydroponic marijuana growing operation at defendants' residence. The caller described the location of the residence and stated that the "skunky odor" of marijuana was very noticeable near the backdoor of the house. The second communication was an anonymous letter that the Sherman County Sheriff's Office received at approximately the same time, which reiterated essentially the same information in the first tip and further stated that the growing operation was in the basement of defendants' residence and involved an estimated 50 to 100 marijuana plants.

The final anonymous communication occurred roughly a week later, on June 20, when a male caller contacted the Oregon State Sheriffs' Association hotline and stated that there was an illegal marijuana growing operation in the basement of a house in "Fulton Canyon"—which corresponded to the location described in the first tip. The caller further stated that he had seen the operation approximately three months before, that the operation could be reached through a trapdoor located in the back of the house, and that the operation involved between 50 to 100 plants.

Raiser also described in detail information he had elicited in his efforts to corroborate the content of the anonymous communications. Specifically:

(1) Raiser spoke with Sherman County Sheriff Lohery, who "lives very near and across the road to the residence in question" and who shared a well with defendants. Lohery confirmed that defendants had purchased the residence during the preceding year, that the water usage on the shared well had "gone up considerably in the last few months," and that "the electricity for the water bill [had] been unusually high in comparison to months past." Lohery also

---

[1] The trial court assumed that all three communications "probably came from a single person," and, on appeal, as before the trial court, neither the state nor defendants dispute that assumption.

told Raiser that he had been inside the house, before defendants bought it, and that there was a trapdoor in the back of the residence that led into the basement. Finally, Lohery told Raiser that, after defendants had moved in, they had undertaken renovations, which, defendant Duarte had told Lohery, consisted of "expanding the basement of the house by knocking a wall out."

(2) Raiser also obtained power records for defendants' residence, both during the period of defendants' occupancy and for the immediately prior two years, as well as power records for "three comparable residence(s) and properties" in the same area. Those records, which were attached to Raiser's affidavit, showed that, in the six months preceding the warrant application, the power consumption at the property substantially exceeded that during comparable periods during prior ownership. Further, with respect to the "comparable" properties, Raiser averred:

> "The power consumption at this property is, in comparison to similar structures in the surrounding area, extremely high. The power usage is[,] during most months, at or double the power usage for the comparable residences and for the most part remains constantly high throughout the year regardless of weather and/or temperature changes."

Raiser also obtained, and attached, power records for the well that defendants shared with Lohery and, in summarizing the content of those records, stated: "The current power consumption on this well, in comparison to the usage on the well previously[,] showed that during most months it was at, or triple[,] the amount used when the previous owners shared the well with Sheriff Lohery."

(3) Finally, Raiser checked defendant Duarte's criminal history and determined that he had been convicted in 1991 for manufacture and delivery of a controlled substance and had been arrested in 1994 for delivery of a controlled substance. Raiser also confirmed that neither defendant had "medical marijuana permits" and that the property was not "listed as a valid location to grow marijuana."

Based on Raiser's affidavit, a magistrate issued a warrant authorizing the search of defendants' property for

various items pertaining to manufacture and distribution of controlled substances. The consequent search, on June 25, 2007, yielded extensive evidence, including over 50 marijuana plants, of a substantial hydroponic marijuana growing operation. Defendants were subsequently indicted on charges of unlawful manufacture of marijuana, ORS 475.856, and unlawful possession of marijuana, ORS 475.864.

Each defendant moved to suppress the items seized during the search, as well as evidence of derivative observations and statements. Defendants' principal contention was that, under the analysis of *State v. Kreutzer*, 138 Or App 306, 909 P2d 175 (1995), Raiser's affidavit did not establish probable cause in that it did not describe the basis on which the anonymous informant had identified the plants that he had observed as marijuana. Alternatively, defendants asserted that the information obtained by Raiser, including the records of power consumption, evidence of increased water consumption, and evidence of defendants' structural modifications to the basement, as well as confirmation of the existence of a trapdoor leading to the basement, was insufficient to corroborate the reliability of the anonymous informant's statements.

The trial court granted the motions to suppress, explaining its reasoning in an extensive letter opinion. The court began by observing that, "[i]f the anonymous tips are credited, the affidavit establishes probable cause. If not, it does not." Accordingly, the court evaluated the information obtained from the anonymous informant by reference to the "*Aguilar/Spinelli*" test,[2] as codified at ORS 133.545(4),[3] by which an affidavit that involves confidential or anonymous information must set forth "(1) the basis of the informant's

---

[2] That test was derived from two decisions, *Aguilar v. Texas*, 378 US 108, 84 S Ct 1509, 12 L Ed 2d 723 (1964), and *Spinelli v. United States*, 393 US 410, 89 S Ct 584, 21 L Ed 2d 637 (1969), which the United States Supreme Court subsequently discarded in favor of a "totality of the circumstances" test, *Illinois v. Gates*, 462 US 213, 103 S Ct 2317, 76 L Ed 2d 527 (1983).

[3] ORS 133.545(4) provides, in part:

"If an affidavit [in support of a search warrant] is based in whole or in part on hearsay, the affiant shall set forth facts bearing on any unnamed informant's reliability and shall disclose, as far as possible, the means by which the information was obtained."

knowledge, and (2) facts showing the informant's 'veracity,' *i.e.*, that he is credible or that his information is reliable." *State v. Villagran*, 294 Or 404, 409 n 3, 657 P2d 1223 (1983). The trial court determined that Raiser's affidavit satisfied the first, "basis of knowledge" prong of that conjunctive test, but concluded that the information in the affidavit did not meet the "veracity" requirement—and, as particularly pertinent, did not demonstrate the reliability of the information conveyed by the anonymous informant.[4]

With respect to reliability, the trial court noted that the affidavit did not set forth the information that defendants' residence was "the only one that fits the informant's description" or facts "explain[ing] the significance of increased water use"—and observed that "[a] reasonable person might conclude that failure to verify verifiable information means the information was false." The court further noted that the affidavit "fails to explain how the anonymous informant recognized marijuana, or whether 'the "skunky odor" of marijuana' described by the informant was the 'distinct and easily recognized' odor of marijuana described by the detective affiant."

The court conversely identified three facts, which, in its view, did "tend to support the anonymous tips, either directly or indirectly"—*viz.*, the confirmed existence of a trapdoor in the back of defendants' residence (corresponding to the informant's description), the fact that defendants had engaged in structural modifications of their house, and the level of electrical power consumption for defendants' property (both of the latter being consistent with Raiser's training and experience averments). However, the trial court observed that those facts were "individually and collectively susceptible to innocent explanations"—*e.g.*, "nothing in the affidavit eliminates some other cause for higher power use, perhaps related to the unexplained increased water use." Ultimately, the trial court concluded:

---

[4] The court observed that the "credibility" feature of the "veracity" prong was inapposite because nothing in the affidavit "address[ed] the anonymous informant's character as a truth teller." On appeal, the state does not dispute that determination, acknowledging that "assessing the informant's reliability is the pertinent question."

"At best, the facts that support reliability lend weak support to the anonymous tips, given that none of them bear directly on the information that [defendants] were growing marijuana. Considered with the facts that tend to discredit the anonymous tip, * * * they are insufficient to show reliability."

On appeal, the state contends that the trial court, in granting suppression of the fruits of the warranted search, "exceeded the proper and lawful scope of its review of the magistrate's decision to issue the warrant." In particular, in the state's view, the trial court, rather than giving an "appropriate degree of deference" to the issuing magistrate's implicit findings of fact predicated on reasonably derived inferences, erroneously and "liberally substituted its own judgment" for that of the magistrate. The state further, and ultimately, asserts that, when reviewed consistently with the applicable "common-sense, non-technical standard," the affidavit established probable cause for the issuance of the search warrant.

Defendants reiterate the trial court's rationale with respect to the "reliability" inquiry, asserting that the purportedly corroborating information in the affidavit referred to facts that were either innately innocuous or so ambiguous or inadequately explained as to preclude a reasonable inference substantiating the anonymous informant's inculpatory allegations. Further, defendants, invoking *Kreutzer*, contend that the affidavit was necessarily insufficient because it did not describe the informant's basis for identifying the plants that he allegedly saw as marijuana plants. Finally, and as an alternative basis for affirmance, defendants contend that suppression was required because the information provided in the anonymous tips, even if credited, was impermissibly stale.

We begin with the standard of review—both the trial court's and ours. In *Castilleja*, which issued several months after the trial court's order of suppression, the Supreme Court fixed that standard in cogent and unmistakable terms:

"When a court reviews a challenge to the sufficiency of an affidavit supporting a magistrate's issuance of a warrant, the question before the reviewing court remains a

legal one. A reviewing court asks whether, based on the facts shown by the affidavit, a neutral and detached magistrate could conclude (1) that there is reason to believe that the facts stated are true; and (2) that the facts and circumstances disclosed by the affidavit are sufficient to establish probable cause to justify the search requested. * * *

"* * * * *

"* * * The sufficiency of the search warrant affidavit presents a legal question for *each* reviewing court, *beginning with the trial court*. That is, as in the trial court, the question before the Court of Appeals was whether *the issuing magistrate* could have concluded that the affidavit (excluding the excised parts) established probable cause to search defendants' home. As to that question, the Court of Appeals was in the same position as was the trial court to evaluate the sufficiency of the facts alleged in the affidavit, the reasonableness of any inferences involved in resolving the legal question presented by the probable cause determination, and, ultimately, the existence of probable cause to support the warrant. No appellate court deference to the trial court's findings or conclusions was appropriate or warranted."

345 Or at 264-66 (emphasis in original).

Thus, when a defendant seeks to suppress evidence from a search authorized by warrant, contending that the information in the predicate warrant did not establish probable cause, the court's function is limited to determining whether, given the uncontroverted facts in the affidavit and reasonably derived inferences, the issuing magistrate reasonably "could have concluded that the affidavit (excluding the excised parts) established probable cause to search * * *." *Id*. at 265. That is so regardless of whether the reviewing court—whether a trial court, this court, or the Supreme Court—might have drawn different inferences yielding a different determination.

Further, in exercising that discrete review function, the court is to view the predicate affidavit in a "commonsense, nontechnical and realistic fashion," with "doubtful cases * * * to be resolved by deferring to an issuing magistrate's determination of probable cause." *State v. Wilson*, 178 Or App 163, 167, 35 P3d 1111 (2001) (internal quotation

marks omitted). That deferential standard comports with "the preference for warranted searches over those conducted without prior judicial authorization." *Id.*

■ The state contends, and we agree, that the trial court's analysis cannot be reconciled with that standard. The court's deconstruction of the content of the affidavit, albeit nuanced and cogent, and its consequent assessment of the relative strength of competing inferences that could be drawn from the uncontroverted facts set out in the affidavit partake of the function of an issuing magistrate and not of the rigorously circumscribed role of a reviewing court. In any event, as is necessarily implicit in *Castilleja*, given that our review, like the trial court's, pertains solely to a "legal question," 345 Or at 265, a trial court's analysis and disposition is ultimately material to our review only to the extent that it assists our own understanding and resolution of that legal question.

■ We conclude, consistently with *Castilleja*, that the magistrate did not err in determining that the affidavit established probable cause. Accordingly, the trial court erred in granting the motions to suppress. In so holding, we begin where the trial court ended, with the informant's reliability.

The issuing magistrate could reasonably have concluded that the totality of facts set out in the affidavit, separate from the informant's allegations, sufficiently corroborated the informant's statements that there was a hydroponic marijuana growing operation in the basement of defendants' residence. Those facts include: (1) Raiser's averments, based on training and extensive experience, pertaining to common characteristics of marijuana growing operations, including increased electrical usage, utilization of hydroponic cultivation methods, and structural modifications to accommodate growing operations; (2) the power records that demonstrated that electrical consumption at defendants' property was substantially greater than during the prior owners' occupancy, with a very substantial increase in the months antedating the warrant application and was also substantially greater than that for other "comparable" properties; (3) Lohery's statements that defendants' use of water from the shared well had increased substantially and

electrical bills confirming that defendants' use of the well far exceeded that of the prior owners; (4) Lohery's statements that defendants had, in fact, undertaken structural modifications of the basement (where the growing operation was allegedly located); (5) Lohery's statement, based on his eyewitness observations, confirming that, as described by the informant (again based on firsthand observation), there was, in fact, a trapdoor leading from the back of the house to the basement; and (6) defendant Duarte's prior arrest and conviction for offenses involving manufacture and delivery of a controlled substance.

To be sure, differing issuing magistrates could draw differing inferences, of varying strength, from those facts. For example, there *could* be innocent explanations for the ostensibly unusual, historically unprecedented levels of power and water consumption, which could be unrelated to a hydroponic marijuana growing operation. Similarly, there could certainly be innocent reasons for defendants' alteration of the basement. But the state was not obligated to negate those possibilities, and the magistrate was not obligated to draw noninculpatory inferences—or, more precisely, was not precluded from drawing inculpatory inferences—from the stated facts. In sum, not only did independent eyewitness information in the affidavit verify the informant's firsthand description of the atypical and not publicly visible means of gaining access to defendants' basement, but other information collectively corroborated his allegations of the existence of a hydroponic growing operation in the basement.[5]

Defendants remonstrate, nevertheless, that, under *Kreutzer*, the affidavit was innately deficient because it failed to set out any basis for the informant's identification of the plants he observed as marijuana. That contention miscasts *Kreutzer*, which involved circumstances materially different from those presented here.

---

[5] Given our conclusion in that regard, which is based on the totality of the information in the affidavit, we need not address, and imply no view, whether individual facts set out in the affidavit, or some permutation of facts less than the totality, would be sufficient to satisfy the reliability requirement.

In *Kreutzer*, we affirmed a trial court's determination, in ordering suppression of evidence of an indoor marijuana growing operation, that the affidavit in support of the warrant application did not include facts sufficiently corroborating the reliability of statements from several unidentified informants that the defendants were growing marijuana at their home. In so holding, we emphasized that, (a) although the affidavit included information pertaining to increased electrical usage at the defendants' residence, it "contained no information from which to evaluate a 'normal' consumption," 138 Or App at 311; and (b) although one unidentified informant stated that he or she had seen "marijuana" plants, the affidavit did not disclose that that informant "had any experience with marijuana or was familiar with its appearance" or that the informant had "describe[d] the sort of paraphernalia ordinarily associated with an indoor marijuana grow operation or the number of plants seen." *Id.* Given the concurrence of those circumstances, and the lack of other, cross-corroborating circumstances, suppression was required. *Id.* at 311-15.

■ Thus, properly understood, *Kreutzer* does not embody or endorse some *per se* rule that an unidentified informant's statements that he or she has seen "marijuana" plants must be deemed unreliable unless the affidavit describes the informant's familiarity or experience with marijuana. Rather, the determination of reliability must be based on the totality of the information set out in the warrant application. And here, that information was materially different and more complete than in *Kreutzer*.

For example, unlike in *Kreutzer*, where the informant provided no details regarding the purported growing operation, including apparatus or number of plants, here, the informant specifically identified the method of cultivation—hydroponic cultivation (which Raiser specifically identified as a means of growing marijuana indoors)—and estimated the number of plants. Further, defendants' substantial increased water usage (as confirmed both by Lohery's statements and records of power consumption pertaining to the well) could quite reasonably be viewed as corroborating the use of hydroponic technologies. Finally, and unlike in *Kreutzer*, the records of power consumption here, including

both the records for defendants' property historically and those for other similar properties in the same area, did provide a basis "from which to evaluate a 'normal' consumption." *Kreutzer*, 138 Or App at 311.

■ We turn, finally, to defendants' proffered alternative basis for affirmance—*viz.*, because the informant had seen the alleged growing operation three months earlier, his observations were so "stale" as to preclude a determination of probable cause as of the date the warrant issued. We reject that contention, which was not raised in the trial court, as irreconcilable with certain of Raiser's uncontroverted averments, based on his extensive training and experience relating to indoor marijuana growing operations. Specifically, as noted, Raiser averred that persons engaged in such operations "maintain a continuous supply of plants," so as to ensure "an ongoing and uninterrupted source of marijuana for harvest and sale." Further, and even more pertinently and durably for "staleness" purposes, Raiser stated:

> "[E]quipment used in the manufacture of marijuana plants is expensive and is normally used for more than one initial grow operation. The equipment is not normally thrown away after being used to grow marijuana based on the grower's capital investment. I also know from my training and experience that[,] even if subjects involved in the manufacture of marijuana moved all or some of the equipment, telltale signs of prior marijuana grow operations still remain. These signs include, but are not limited to, growing equipment, marijuana leaf material, receipts from marijuana growing and harvesting equipment, drug records, and customer lists. These items can be used to prosecute a subject for manufacturing marijuana[.]"

Given those averments, the magistrate could properly determine that it was probable that the items identified in the warrant application were presently still to be found at defendants' residence.

The trial court erred in granting defendants' motions to suppress.

Reversed and remanded.