Argued and submitted January 5, reversed and remanded February 8, petition for review denied May 31, 2012 (352 Or 76)

## STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

## ROBERT GRUNTZ,
*Defendant-Respondent.*

Crook County Circuit Court
09FE0073; A145351

273 P3d 183

Paul L. Smith, Attorney-in-Charge, Collateral Appeals, argued the cause for appellant. On the briefs were John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Linda Wicks, Assistant Attorney General.

Steven D. Bryant argued the cause for respondent. With him on the brief was Bryant, Emerson & Fitch, LLP.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

HASELTON, P. J.

### HASELTON, P. J.

The state appeals, under ORS 138.060(1)(c), from an order suppressing evidence of animal neglect, ORS 167.325; ORS 167.330, discovered as a result of two searches pursuant to search warrants.[1] The trial court, after excising certain material from the affidavit in support of the warrant application for the first search (a ruling not challenged on appeal), determined that the remaining content was insufficient to establish probable cause that evidence of animal neglect would be found at defendant's ranch. Consistently with the standard of review prescribed in *State v. Castilleja*, 345 Or 255, 264-66, 192 P3d 1283, *adh'd to on recons*, 345 Or 473, 198 P3d 937 (2008), we conclude that the magistrate could properly have concluded that the supporting affidavit, as excised, established probable cause that a search of defendant's property would yield evidence that defendant had failed to provide "[m]inimum care" for horses on his ranch by failing to provide "[f]ood of sufficient quantity and quality to allow for normal growth or maintenance of body weight." *Former* ORS 167.310(6)(a) (2007), *renumbered as* ORS 167.310(7)(a) (2009).[2] Accordingly, we reverse and remand.

Before recounting the particular facts in this case pertaining to probable cause, it is useful—indeed, essential— to put what follows into legal perspective. Two overarching considerations circumscribe and inform our review. The first is procedural—the operative standard of review. In *State v. Duarte/Knull-Dunagan*, 237 Or App 13, 21-22, 238 P3d 411, *rev den*, 349 Or 370 (2010), we summarized the applicable principles:

> "[W]hen a defendant seeks to suppress evidence from a search authorized by warrant, contending that the information in the predicate warrant did not establish probable cause, the court's function is limited to determining whether, given the uncontroverted facts in the affidavit and reasonably derived inferences, the issuing magistrate

---

[1] As described below, *see* 248 Or App at 17, the second search was entirely derivative of the first. Thus, the propriety of suppression with respect to both searches depended on the lawfulness of the first search.

[2] After the search warrants in this case issued, this section of the statute was renumbered, without textual change, as ORS 167.310(7). Or Laws 2009, ch 233, § 2.

reasonably 'could have concluded that the affidavit (excluding the excised parts) established probable cause to search * * *.' [*Castilleja*, 345 Or] at 265. That is so regardless of whether the reviewing court—whether a trial court, this court, or the Supreme Court—might have drawn different inferences yielding a different determination.

"Further, in exercising that discrete review function, the court is to view the predicate affidavit in a 'common-sense, nontechnical and realistic fashion,' with 'doubtful cases * * * to be resolved by deferring to an issuing magistrate's determination of probable cause.' *State v. Wilson*, 178 Or App 163, 167, 35 P3d 1111 (2001) (internal quotation marks omitted). That deferential standard comports with 'the preference for warranted searches over those conducted without prior judicial authorization.' *Id*."

The second transcendent consideration is substantive —the gravamen of the purported crimes. An abstract extended discussion of the content of a search warrant application without reference to what must be established—*i.e.*, probable cause of *what*?—is an empty exercise. Here, in issuing the warrant for the predicate first search, the magistrate determined that there was probable cause with respect to first-degree and second-degree animal neglect, both of which require a showing that the person has "fail[ed] to provide *minimum care* for an animal" in the person's custody or control. ORS 167.325(1) (emphasis added); ORS 167.330(1) (emphasis added).[3] *Former* ORS 167.310(6), in turn, defines "[m]inimum care," as pertinent here, as follows:

" 'Minimum care' means care sufficient to preserve the health and well-being of an animal and, except for emergencies or circumstances beyond the reasonable control of

---

[3] ORS 167.325(1) provides:

"A person commits the crime of animal neglect in the second degree if, except as otherwise authorized by law, the person intentionally, knowingly, recklessly or with criminal negligence fails to provide minimum care for an animal in such person's custody or control."

ORS 167.330(1) provides:

"A person commits the crime of animal neglect in the first degree if, except as otherwise authorized by law, the person intentionally, knowingly, recklessly or with criminal negligence fails to provide minimum care for an animal in the person's custody or control and the failure to provide care results in serious physical injury or death to the animal."

the owner, includes, but is not limited to, the following requirements:

"(a)   Food of sufficient quantity and quality to allow for normal growth or maintenance of body weight."

Thus, our inquiry here reduces to whether the issuing magistrate could reasonably have concluded that the uncontroverted and unexcised facts in the predicate affidavit, along with inferences reasonably derived from those facts, established probable cause that a search of defendant's ranch would yield evidence that defendant had failed to provide horses in his custody or control with "[f]ood of sufficient quantity and quality to allow for normal growth or maintenance of body weight." *Former* ORS 167.310(6)(a). We turn to the content of that affidavit.

On March 28, 2009, Crook County Deputy Sheriff Plinski executed an affidavit in support of an application to search defendant's ranch for evidence of animal neglect. As pertinent here,[4] Plinski, in addition to recounting her training and experience with respect to animal-related crimes, including animal neglect and animal abuse, described her "personal experience and knowledge" of horses that "comes from being raised around horses all my life" and "currently own[ing] 3 horses that I care for on a daily basis." By way of pertinent experience, Plinski further averred:

"From 2002 to 2007[,] I managed a ranch consisting of about 20 head of horses in Deschutes County[,] keeping records of all of the care for each. The horses were on breeding programs along with a routine feeding * * * and supplement program. Based on my training and experience I know that each horse has to stay on a routine program to maintain weight and good health.

"Based on my history of owning horses I know horses need to be fed and watered on a daily basis * * *. Horses need

---

[4] The description that follows does not, except collaterally, refer to the content of Plinski's affidavit that the trial court excised. Further, because we conclude that the nonexcised portions of the affidavit establish probable cause with respect to defendant's alleged failure to adequately feed his horses, we limit our description to the portions of Plinski's affidavit pertaining to that type of animal neglect and do not—except, again collaterally—refer to those portions of the affidavit pertaining to defendant's purported failure to provide adequate veterinary care to one or more horses.

approximately 20 pounds of feed per day and an unlimited water source."

Plinski's March 28 affidavit described her observations and information obtained with respect to the condition of horses on defendant's property. On December 19, 2008, Plinski visited defendant's ranch along with Crook County Sergeant Chapman.[5] At that time, Plinski "observed about 15 horses that appeared to be malnourished and severely under weight." One of the ranch hands told Plinski that he "did not approve" of the feeding methods being employed and that he "felt the horses needed to be fed more."

On December 22, Chapman, along with a veterinarian, Sharpnack, returned to the ranch to speak with defendant. Defendant "did not feel as though the horses were in bad condition" in that they were "race horses and didn't need to be fed much." However, defendant also stated that "he was working on getting more hay to feed on a more regular basis." The veterinarian, Sharpnack, was of the opinion, following. the December 22 visit, that, "for the most part[,]" the horses' condition did not evince "neglect"—"but that the care needed to be stepped up to the next notch so that the condition of the horses did not fall below the level that they were[,] and actually in most of the horses they needed to improve somewhat."

Between the December 22 visit and late March 2009, the Crook County Sheriff's Office received "approximately eight citizen complaints of the horses not being fed on a regular basis."[6] Plinski's March 28 affidavit did not specify the date of those complaints or the identity of the complainant or complainants.

On March 26, 2009, Plinski met with an informant, who wished to remain anonymous, about the informant's concerns, based on personal observation, that a horse at defendant's ranch required immediate veterinary care. Plinski's description of the interview with the informant does not

---

[5] A copy of Chapman's contemporaneous report, describing both the December 19 visit and his visit three days later, on December 22, was attached and incorporated as an exhibit to Plinski's March 28 affidavit.

[6] At some unspecified point in that interval, a feed supply store also contacted the Sheriff's Office "about filing an NSF check case" based on delivery of hay to defendant's ranch.

include any reference to the informant having observed horses that were inadequately fed.

On March 27, in response to the informant's complaint, Plinski and two other officers spoke with the ranch manager at his home, which is not located on the ranch. The manager told Plinski that "he knew the horses had not been fed to standards lately," but "he was working on it." The manager further stated that "he has not been able to purchase hay regularly because the owners have not been transferring funds to be able to do so."[7] The manager told Plinski that, "if the owners did not transfer money today[,] he was coming to see us [law enforcement]."

The manager subsequently, and without defendant's consent, took the officers to the ranch, where they observed evidence of animal neglect. Plinski then submitted a warrant application, supported by her affidavit, describing her March 27 observations at the ranch—material that the trial court ultimately excised in determining the motion to suppress— as well as the other matters recounted above. The magistrate issued the warrant, and officers seized, *inter alia*, several horses. However, in executing the warrant, the officers inadvertently failed to seize one additional horse that required medical treatment; accordingly, on March 31, Plinski submitted an application for a second warrant authorizing the search of that horse. The magistrate issued that warrant on March 31, and it was executed on April 2.

Defendant was charged by indictment with multiple counts of first-degree and second-degree animal neglect. ORS 167.330; ORS 167.325. Defendant moved to suppress the evidence seized during the execution of the two search warrants.[8] Defendant argued, in part, that the material in Plinski's affidavit derived from the March 27 warrantless entry of the ranch must be excised, that the material pertaining to the two lawful December entries was impermissibly "stale," that the information provided by the "anonymous"

---

[7] In that connection, the manager mentioned that "none of the [ranch] employees [had] been paid lately."

[8] Defendant also filed a motion to controvert material in Plinski's March 28 affidavit. The trial court denied that motion, and, on appeal, defendant does not contest that ruling.

informant was not reliable, and that, in all events, the material in Plinski's affidavit failed to establish probable cause.

The trial court excised the material derived from the March 27 entry and, after rejecting defendant's contentions concerning staleness and assuming, without deciding, the informant's reliability, concluded that the unexcised material failed to establish probable cause. Specifically, with respect to animal neglect based on inadequate feeding, the trial court reasoned that the affidavit failed to establish probable cause because,

> "[w]hile [the] December investigation does establish some greater attention to care and feeding is necessary, based upon the professional opinion of Dr. Sharpnack a case for animal neglect was not present; * * * [the manager] expressed a concern that feeding patterns were weak, but failed to describe what, if any, impact was exhibited by the herd of horses on the Powell Butte Ranch. That lack of information is particularly significant considering the unnamed informant failed to report any concern regarding other horses (nearly 80 in number) on the premises."

The trial court, consequently, granted the motion to suppress evidence seized pursuant to the March 28 search and the derivative April 2 search.

On appeal, the state contends that the trial court's analysis and disposition cannot be reconciled with the standard of review prescribed in *Castilleja* and amplified in *Duarte/Knull-Dunagan*. Specifically, the state asserts that "[t]he trial court here erroneously made its own findings and drew its own inferences * * * rather than examining the facts and inferences supporting probable cause to determine whether they were sufficient such that the issuing magistrate *could* find probable cause." (Emphasis in original.)

We agree. Here, the unexcised portions of Plinski's affidavit establish, at least, the following facts: (1) Plinski, who had extensive experience in managing and caring for horses, stated that horses need "to stay on a routine program to maintain weight and good health" and that they "need to be fed and watered on a daily basis," requiring "approximately 20 pounds of feed per day." (2) In late December 2008, Plinski observed at defendant's ranch "about 15 horses that

appeared to be malnourished and severely under weight." (3) At the same time, a ranch hand told Plinski that he believed that "the horses needed to be fed more." (4) At the same time, defendant stated that he was "working on getting more hay to feed on a more regular basis." (5) Between late December 2008 and late March 2009, the Crook County Sheriff's Office received "approximately eight citizen complaints of [defendant's] horses not being fed on a regular basis." (6) On March 27, the ranch manager told Plinski that the horses had "not been fed to standards lately"—and that that was so because he had "not been able to purchase hay regularly because the owners [had] not been transferring funds to be able to do so." (7) Although the manager said that he had "been trying to get the horses fed on a regular basis," he was also "coming to see" the Sheriff's Office if "the owners [including defendant] did not transfer money [for the purchase of feed] today."[9]

From the foregoing, an issuing magistrate *could* reasonably have found and inferred that, even as of late December, at least some of defendant's horses were not being fed "[f]ood of sufficient quantity and quality to allow for normal growth *or maintenance of body weight." Former* ORS 167.310(6)(a) (emphasis added). To be sure, the veterinarian, Sharpnack, *may* have had a different view—but, given Plinski's extensive experience in caring for horses and the qualified character of Sharpnack's evaluation (*e.g.*, "for the most part * * * was not that it was neglect"), the issuing magistrate was not required to give Sharpnack's assessment conclusive or preclusive effect.

Further, an issuing magistrate *could* reasonably also have found, by way of reasonable inference, that the neglect that existed in late December 2008 continued to exist as of March 28, 2009. Even putting aside the multiple, but amorphous, citizen complaints about lack of regular feeding in that interim, the ranch manager's statements to Plinski on March 27 regarding his inability to purchase feed regularly for the horses because of defendant's failure to provide the

---

[9] None of that information was obtained from the informant whose reliability, as noted, the trial court assumed but did not determine.

necessary funds supports a reasonable, albeit not ineluctable, inference that the conditions existing in December had not been remedied by March. In that regard, an issuing magistrate could reasonably have viewed the ranch manager's statements about intending to contact law enforcement "today"—that is, "blowing the whistle" on his employer—as confirmation that the conditions extant in December had not only continued but had become so extreme as to elicit an extraordinary response.

We emphasize that we do not suggest that a reasonable magistrate could not have drawn different inferences, for the reasons identified by the trial court in granting suppression, and, for those reasons, have declined to issue a warrant. For example, a magistrate could reasonably have drawn a negative inference from the content of Plinski's interview of the informant on March 27—*viz.*, that, if the informant had seen evidence of inadequately fed horses when she visited the ranch, she would have so informed Plinski, but she did not. Or a magistrate could reasonably have construed the ranch manager's comments about funding for feed as expressing only frustration about a nonculpable circumstance or merely apprehension about a prospective, not yet realized, condition.

But all of that is immaterial to our review (or the trial court's review) under *Castilleja*. As we explained in *Duarte / Knull-Dunagan*, the question is not whether we or the trial court could, or would, have construed the predicate affidavit differently, drawing different inferences; rather, the question is whether the issuing magistrate could reasonably have construed the affidavit, including reasonably derivative inferences, in such a way as to substantiate probable cause. 237 Or App at 21. We appreciate the trial court's thoughtful consideration of the motion to suppress but respectfully reiterate one observation from *Duarte / Knull-Dunagan*:

> "The [trial] court's deconstruction of the content of the affidavit, albeit nuanced and cogent, and its consequent assessment of the relative strength of competing inferences that could be drawn from the uncontroverted facts set out in the affidavit partake of the function of an issuing magistrate and not of the rigorously circumscribed role of a reviewing court."

*Id.* at 22.

Consistently with the standard of review prescribed in *Castilleja*, we conclude that the magistrate could properly have concluded that the unexcised portions of Plinski's March 28 affidavit established probable cause to search defendant's ranch for evidence of animal neglect and, particularly, of failure to provide "[m]inimum care" as defined in *former* ORS 167.310(6)(a). Accordingly, the trial court erred in suppressing evidence seized pursuant to the March 28, 2009, search and the derivative April 2, 2009, search.

Reversed and remanded.