Argued and submitted February 25, reversed and remanded July 8, 2004

# STATE OF OREGON,
*Respondent,*

*v.*

# DREW ALLEN CASTRO,
*Appellant.*

## 01CR0516; A118941

93 P3d 815

Kimi Nam, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Ozanne, Executive Director.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Armstrong and Brewer,* Judges.

LANDAU, P. J.

---

* Brewer, J., *vice* Leeson, J. pro tempore.

## LANDAU, P. J.

Defendant appeals a judgment of conviction for one count each of possession and manufacturing a controlled substance. ORS 475.992(1), (4). He contends that the trial court erred in denying his motion to controvert information in an affidavit supporting the issuance of a search warrant for his residence and in denying a motion to suppress evidence obtained pursuant to that warrant. We conclude that the trial court did not err in denying the motion to controvert, but that it did err in denying the motion to suppress. We therefore reverse and remand.

The relevant facts are not disputed. In April 2000, police executed a search warrant for the residence of a known methamphetamine distributor, Robert Mills, located at 635 East Jones Creek Road in Grants Pass. The warrant was supported by an affidavit prepared by officer Myers, which stated:

> "I have been a detective with the Josephine Interagency Narcotics Team since 1994. In approximately 1995 myself, and other members of the JOINT Team, were getting information from people we had arrested and Confidential Informants that Robert Mills, who lives on East Jones Creek Road, had gotten out of prison and was dealing in methamphetamine again. I am not familiar with Mills by sight but do know he has a reputation of being a higher-level methamphetamine distributor in the drug community."

The affidavit then recited that Myers checked Mills's criminal history, which showed prior arrests in California for drug-related offenses and a 1989 federal conviction for conspiracy to manufacture and possess with the intent to distribute methamphetamine.

The Myers affidavit then turned to a recent contact from a confidential informant:

> "Within the last six months I was contacted by a subject who stated that they had been purchasing methamphetamine from Mills at Mills' residence. The subject gave information about Mills and was asked if the subject would be

willing to take a polygraph examination to confirm the subject's truthfulness. The subject stated the subject would.

"The subject stated the subject wished to remain confidential out of fear of retaliation. The subject will hereinafter be referred to as CI.

"CI stated that CI has known Mills for over two years. CI stated that CI has purchased methamphetamine from Mills at Mills' residence on several occasions. CI stated that CI has been present at Mills' residence and observed Mills with approximately one quarter pound of methamphetamine at a time. CI stated that CI has seen Mills on several occasions with several ounces of methamphetamine, scales, packaging materials, and also large amounts of cash. CI stated that CI has observed Mills weigh out methamphetamine for sales. CI stated that CI also knows through conversation and by witnessing it, that Mills fronts methamphetamine to subjects to deal for him and then the subjects pay him the money for the methamphetamine at a later time.

"* * * * *

"I pulled the Assessor's records for 685 East Jones Creek Road, Grants Pass, Josephine County, Oregon. The paperwork indicates the residence is owned by Robert Mills. The paperwork also shows a photograph of the residence and a shed. I have shown a picture of the residence from the Assessor's records to CI and CI stated CI recognizes that residence as belonging to Robert Mills on East Jones Creek Road."

The affidavit then described how Myers arranged for CI to conduct a controlled purchase of methamphetamine from Mills at the residence located at 685 East Jones Creek Road.

Myers executed the warrant at Mills's residence on May 1, 2000, and recovered a number of items indicating that Mills was involved in the delivery of controlled substances.

Over a year later, defendant began renting the 685 East Jones Creek Road residence. A month after that, police contacted defendant at the residence because a friend staying with defendant had violated a restraining order and had kidnapped her children. The officers questioned defendant and

learned that he was the new tenant at the residence. They filed an incident report to that effect.

A month later, in August 2001, Detective Jenista received information from a confidential informant that Mills was still involved in the manufacture and sale of methamphetamine. He filed an application for a search warrant for the 685 East Jones Creek Road residence supported by an affidavit that stated, in part:

> "Within the last 72 hours I had contact with CI. CI told me that CI knows Bob (Robert) Mills. CI told me that, within the last 72 hours, CI was present when Mills delivered an undisclosed amount of methamphetamine to a third party. CI told me that the methamphetamine was packaged in a small ziploc plastic bag. CI told me that the methamphetamine was whitish in color, crystalline in form, and slightly moist."

Jenista also attached the April 2000 Myers affidavit and referred to information in it concerning Mills's activities at the residence 16 months earlier.

The search warrant was issued and was executed at the 685 East Jones Creek Road residence where defendant, not Mills, now resided. Defendant, however, was found in possession of methamphetamine and related paraphernalia.

Defendant moved to controvert Jenista's affidavit, arguing that Jenista had failed adequately to investigate whether Mills still resided at 685 East Jones Creek Road. According to defendant, Jenista had relied on stale information concerning Mills's activities at the residence over a year before obtaining the warrant without making any attempt to verify that Mills remained at the residence. In fact, defendant argued, if Jenista had checked with, for example, utility providers, he would have learned that defendant—not Mills—was the current subscriber. The trial court denied the motion to controvert. The court found "a complete lack[ ] of evidence that would allow this Court to find the officer was neither trustworthy [n]or truthful or not in good faith to file the application for the search warrant."

Defendant also moved to suppress the evidence obtained from the search of the residence on the ground that

the Jenista affidavit lacked information sufficient to permit a reasonable person to conclude that, more likely than not, evidence of a crime would be found there. Defendant argued that the information concerning criminal activities at the 685 East Jones Creek Road residence was over a year old and was stale. Defendant observed that nothing in Jenista's affidavit mentioned any more recent criminal activities at the residence. The trial court denied the motion to suppress as well. The court explained:

"I see the issue you're making, the CI's not—or the affidavit['s] not saying that the location where the CI saw the transfer of drugs, but what we really have is we have two affidavits involving Mr. Mills over a period of years; including that he owns the residence, that his vehicles are registered there, he's been convicted of drugs in the past, he's—we have an ongoing pattern of Mr. Mills being involved in drugs.

"And, frankly, I don't think the fact that's not in here would make a difference if it were, and that is if this—this particular delivery in the last 72 hours did not occur at his house, that does not still eliminate all the other factors indicating that he is living there and doing drugs and evidence of that drug activity can be at this house."

On appeal, defendant first assigns error to the denial of his motion to controvert, essentially recapitulating his trial court argument that Jenista should have investigated further whether Mills still lived at the 685 East Jones Creek Road residence before obtaining the warrant. The state argues that whether Jenista could have—or even should have—investigated further is beside the point. According to the state, the relevant inquiry is whether, based on the investigation that Jenista did perform, his statements were made in good faith, were accurate, and were truthful.

We agree with the state. Under ORS 133.693(2), a defendant may contest "the good faith, accuracy and truthfulness of the affiant with respect to the evidence presented" before the issuing authority, that is, the authority issuing the warrant. Whether an affidavit shows bad faith, contains inaccuracies, or omits material information is a question of fact, and we defer to a trial court's findings in that regard as

long as there is evidence to support them. *State v. Keeney*, 323 Or 309, 317, 918 P2d 419 (1996).

In this case, the trial court found that defendant had failed to meet his burden of proving Jenista's lack of good faith, accuracy, and truthfulness. The record supports that finding. We reject defendant's assignment without further discussion.

■ Defendant next assigns error to the denial of the motion to suppress. Again, defendant reiterates the argument that he advanced at trial, that is, that nothing in the Jenista affidavit establishes probable cause to believe that evidence of a crime would be found at the 685 East Jones Creek Road residence. The state responds that, in light of Mills's history of involvement in the production and distribution of methamphetamine, it was not unreasonable for the trial court to conclude that, even 16 months after the most recent information concerning activities at the 685 East Jones Creek Road residence, he was still there.

■ ORS 133.555(2) provides that a judge may issue a search warrant if, after reviewing an application and supporting affidavit, the judge finds that "there is probable cause to believe that the search will discover things specified in the application and subject to seizure." In reviewing a trial judge's determination that the warrant was supported by probable cause, we examine the information in the supporting affidavit in a "commonsense and realistic fashion" to determine as a matter of law "whether a neutral and detached magistrate could conclude, based on the facts and circumstances shown by the affidavit, that there was probable cause to believe that the search would discover things specified in the affidavit *in the places requested to be searched.*" *State v. Villagran*, 294 Or 404, 408, 657 P2d 1223 (1983) (emphasis added).

The standard is one of probability. *State v. Carter/ Grant*, 316 Or 6, 13, 848 P2d 599 (1993). While that does not mean a certainty, it does mean that the information in the affidavit must be such that a reasonable person could conclude that it is more likely than not that the objects of the search will be found *at the specified location. Stone v. Finnerty*, 182 Or App 452, 470, 50 P3d 1179, *modified on*

*recons*, 184 Or App 111, 55 P3d 531 (2002), *rev den*, 335 Or 422 (2003). In this case, therefore, the determinative issue is whether the August 2001 Jenista affidavit provides sufficient information to enable a reasonable person to conclude that it is probable—that is, that it is more likely than not—that evidence of methamphetamine production and distribution would be found at the 685 East Jones Creek Road residence at that time.

As we have noted, the August 2001 Jenista affidavit incorporates the information contained in the Myers affidavit, prepared 16 months earlier. That April 2000 affidavit clearly establishes that Mills had been living at the 685 East Jones Creek Road residence for an unspecified period of time and that, while at that residence, he operated a significant methamphetamine production and distribution operation. It further establishes that, shortly before the affidavit was prepared, a confidential informant engaged in a controlled buy involving Mills at the residence. Thus, there is no question that the information in Jenista's affidavit—by incorporating information from the affidavit prepared 16 months earlier—clearly establishes probable cause to believe that the police would find evidence of methamphetamine production and distribution at the 685 East Jones Creek Road residence in April 2000.

The question is whether Jenista's August 2001 affidavit provides a basis for concluding that, more likely than not, the same sort of evidence would be found at the residence 16 months later. As we have noted, the only additional information that the Jenista affidavit offers is the fact that, within the previous 72 hours, a confidential informant witnessed "Mills deliver[ ] an undisclosed amount of methamphetamine to a third party." Significantly, the confidential informant did not say that he witnessed the delivery take place at the 685 East Jones Creek Road residence. In fact, the confidential informant did not make any reference to the location of the delivery at all. Moreover, nothing in the August 2001 affidavit provides any information concerning where Mills resided at that time. Thus, while the new information does establish probable cause to believe that Mills was continuing to engage in the delivery of methamphetamine some place, it does not provide any information from which it reasonably could be

inferred that the delivery occurred at the 685 East Jones Creek Road residence.

The state insists that, because Mills was involved in the manufacture and delivery of methamphetamine at the 685 East Jones Creek Road residence in April 2000 when he was observed engaged in a methamphetamine transaction 16 months later, it is reasonable to assume that he was still working out of the same residence. Defendant argues that the 16-month-old information about Mills's activities is simply too stale to provide a basis for drawing conclusions about the location of his current activities. The state replies that, under circumstances involving methamphetamine production and distribution, a 16-month-old transaction actually is "recent" information. According to the state, where drug production is involved, courts are entitled to assume that the production is of a continuing nature. In support it cites *State v. Chezem*, 125 Or App 341, 865 P2d 1307 (1993), and *State v. Wilson*, 120 Or App 382, 852 P2d 910, *rev den*, 317 Or 584 (1993).

Whether information has become "stale" by the passage of time depends on the character of the crime and the nature of the thing to be seized. *State v. Corpus-Ruiz*, 127 Or App 666, 670, 874 P2d 90 (1994). The cases cited by the state illustrate the point, although not in the way that the state suggests.

In *Chezem*, the affiant police officer stated that, within the past 30 days, he had talked to a confidential informant who told him that the defendant was involved in a methamphetamine production operation at the defendant's residence. In addition, the officer stated that, five days earlier, the confidential informant had told him that he had seen "more than a user's amount" of methamphetamine at the same house. In that context—that is, in the context of information that was five days old—we said that "[t]he magistrate could infer from these facts that there was a continuing operation and that the evidence sought would not have been moved or consumed." 125 Or App at 349.

Similarly, in *Wilson*, the affidavit established that the police officer spoke with a confidential informant who

told him that, six weeks earlier, he had learned of a methamphetamine production operation that had been ongoing at a residence for seven to eight months. The officer stated in his affidavit that, in his experience with drug operations, laboratories generally are ongoing enterprises that last for "extended periods." 120 Or App at 387. Based on that information, we held that a reasonable magistrate could conclude that the laboratory was still at the residence six weeks later. *Id.*

There are cases in which we have sanctioned information that is older than that. But, in each case, the older information was refreshed with more recent information that provided a basis for concluding that the criminal activity continued *at the stated location*.

For example, in *State v. Gale/Rowden*, 105 Or App 489, 497-98, 805 P2d 158, *rev den*, 311 Or 427 (1991), we held that two-year-old information that the defendant was manufacturing methamphetamine was properly considered in combination with a report that, only two weeks earlier, the operation continued at the same location. Likewise, in *State v. Howell*, 93 Or App 551, 556-59, 763 P2d 179 (1988), *rev den*, 307 Or 405 (1989), we concluded that a neighbor's report that the defendant had started growing marijuana seven years earlier was relevant when viewed in conjunction with observations of the defendant's activities the week before the affidavit was prepared and with recent power usage data obtained the preceding day.

In contrast, in *State v. Mituniewicz*, 186 Or App 95, 62 P3d 417, *rev den*, 335 Or 578 (2003), we concluded that information about a marijuana growing operation between one and three years earlier was too stale to provide probable cause to believe that the operation continued at the same location. The state had objected that, in cases such as *Gale/Rowden* and *Howell*, we had sanctioned reliance on information that was at least as old. Rejecting the state's argument, we explained that, in those cases, more recent information about continuing criminal activity at the location to be searched "establish[ed] a current basis to support the existence of probable cause." *Mituniewicz*, 186 Or App at 105.

In this case, we are confronted with information about a drug operation at the 685 East Jones Creek Road residence that had occurred 16 months earlier. We have no statement from the affiant officer that, in his experience, this was the sort of operation that ordinarily would continue for such an extended period of time. And we have no more recent information that there was criminal activity at that location. The only more recent information concerns a drug transaction at an undisclosed location. There is thus no more recent information from which it reasonably could be concluded that, more likely than not, evidence of continuing methamphetamine production and distribution would be found at 685 East Jones Creek Road. It necessarily follows that the trial court erred in denying defendant's motion to suppress.

Reversed and remanded.