Argued and submitted August 31, 2004, affirmed February 9, petition for review denied July 6, 2005 (338 Or 681)

# STATE OF OREGON,
*Respondent,*

*v.*

# TOBY SHAWN KEERINS,
*Appellant.*

## 02C41151; A120817

106 P3d 166

Shawn Wiley, Deputy Public Defender, argued the cause for appellant. With him on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

LANDAU, P. J.

## LANDAU, P. J.

Defendant appeals a judgment of conviction for delivery of a controlled substance. ORS 475.992. He assigns error to the denial of his motion to suppress evidence obtained from a search of his residence. He contends that the affidavit in support of the warrant failed to establish probable cause that evidence of drug dealing would be found at the residence. We affirm.

On January 25, 2002, Keizer Police Officer Goodman submitted an application for a warrant to search defendant's residence for evidence of possession and delivery of controlled substances. The application included an affidavit, that contained the following information.

Eight months earlier, in May 2001, Goodman had responded to a call to 5970 Radiant Drive NE in Keizer to locate a wanted felon, Robert Padua. As he approached the house, he saw Padua, defendant, and defendant's brother Kris flee. When Goodman ultimately caught up with defendant and his brother, both stated that they lived at the Radiant Drive house. Goodman arrested Padua. Goodman asked Padua why he and his companions fled, and Padua replied that "each of them had heroin on their [sic] person."

Three months after that, in August 2001, Salem police officers contacted defendant's brother Kris, and he told them that he continued to reside at the Radiant Drive house. And, four months after that, in January 2002, Goodman saw Kris walking toward the house.

Meanwhile, Goodman learned from Keizer Police Detective Hill that Hill believed that defendant and his brother continued to reside at the Radiant Drive house. Hill also told Goodman that a confidential reliable informant had told Hill that Kris sold heroin and that he "will walk from his residence at 5970 Radiant Drive Northeast and meet his buyers on foot away from his house." Hill also reported that the confidential informant told him that Kris kept the heroin concealed in a small bag hidden in his underwear.

On January 24, 2002, Goodman and Keizer Police Officer Young drove past 5970 Radiant Drive NE. Goodman

ran a computer check on defendant's brother Kris and learned that there was an outstanding warrant for Kris's arrest for a parole violation. Goodman and Young walked to the door and knocked. Kris answered but delayed coming out. Goodman told Kris that he was under arrest. Kris responded by closing the window blinds and walking away from the door. About a minute later, Kris opened the door and stepped out into the carport.

At the police station, Kris changed into prison clothing. As he did, he removed a plastic bag from his underwear and attempted to flush it down a toilet, but he was foiled by a guard. The bag contained "more than a user amount" of heroin. Police also found in Kris's wallet two small pieces of paper with heroin on them and over $1,000 in cash.

In addition to the foregoing facts, Goodman's affidavit explained that, from his training and experience, he knew that "suspects involved in drug activity and property crimes often shift evidence or proceeds of the crimes from one place to another in order to prevent the discovery of the crimes and evidence." He also explained that, from his experience, "persons who deal and sell controlled substances often transport the substances from one location to another often concealing the substances [on] their person and in their vehicles."

The trial court issued a search warrant. Officers executing the warrant at the Radiant Drive residence discovered in defendant's bedroom six grams of heroin, cutting materials, scales, and packaging commonly used to carry controlled substances. Following his arrest, defendant moved to suppress the evidence obtained from the search of his residence on the ground that Goodman's affidavit did not establish probable cause to believe that evidence of a crime would be found there. The trial court denied the motion. Defendant later was found guilty after a trial to the court on stipulated facts.

■    On appeal, defendant repeats his contention that Goodman's affidavit did not establish probable cause to believe that evidence of a crime would be found at the Radiant Drive residence. Defendant concedes that the affidavit stated facts sufficient to conclude that his brother Kris

was involved in the sale of heroin. Defendant contends, however, that the affidavit failed to establish any nexus between Kris's illegal activity and the residence. In particular, defendant argues that the only information connecting Kris's drug activity and the residence was supplied by a confidential informant, which information must be disregarded because the basis for it was not supplied, nor was the informant's veracity established.

The state replies that the information in the affidavit, taken as a whole, is sufficient to establish probable cause. The state argues that "[t]he primary foundation" for probable cause is the discovery of "a dealer's quantity of heroin" on Kris's person when he was arrested at his home. In addition, the state relies on the fact that (1) a confidential informant specifically stated that Kris sold heroin from the house, (2) eight months earlier, Padua reported that defendant and his brother had fled the house with an unspecified quantity of heroin in their possession, and (3) Goodman stated that, in his training and experience, suspects involved in drug activity often keep evidence of that activity in their possession.

The issuance of search warrants is governed by ORS 133.545, which provides that an application for a warrant "shall be supported by one or more affidavits particularly setting forth the facts and circumstances tending to show that the objects of the search are in the places, or in the possession of the individuals, to be searched." ORS 133.545(4). If the judge reviewing the application and supporting affidavit finds that "there is probable cause to believe that the search will discover things specified in the application * * * the judge shall issue a search warrant." ORS 133.555(2).

■ When we review the trial court's determination that probable cause existed, we examine the facts in the supporting affidavit in a "commonsense and realistic fashion" to determine, as a matter of law, "whether a neutral and detached magistrate could conclude, based on the facts and circumstances shown by the affidavit, that there was probable cause to believe that the search would discover things specified in the affidavit in the places requested to be searched." *State v. Villagran*, 294 Or 404, 408, 657 P2d 1223 (1983).

■   The standard is "probability." As we explained in *State v. Castro*, 194 Or App 109, 115, 93 P3d 815 (2004), "[w]hile that does not mean a certainty, it does mean that the information in the affidavit must be such that a reasonable person could conclude that it is more likely than not that the objects of the search will be found *at the specificed location*." (Citations omitted; emphasis in original.) Thus, in this case, the issue is whether Goodman's affidavit is sufficient to permit a reasonable person to conclude that, more likely than not, evidence of a crime would be found at the Radiant Drive residence.

As we have noted, the state argues that "[t]he primary foundation" for probable cause in this case is the fact that Kris had been caught with a sizeable quantity of heroin in his underwear. By itself, however, the mere fact of Kris's possession of drugs does not provide evidence from which a reasonable person could conclude that, more likely than not, additional drugs would be found at the Radiant Drive residence. *See, e.g., State v. Wilson*, 178 Or App 163, 168-70, 35 P3d 1111 (2001) (mere fact that a suspect states that he has "lots of methamphetamine to sell" does not establish a "nexus" to any particular location where the drugs are likely to be found). We must, therefore, look elsewhere in Goodman's affidavit for information that could be taken to establish that, more likely than not, evidence of drug activity would be found at the Radiant Drive residence.

■   As the state points out, Goodman's affidavit offers at least one statement directly tying defendant's brother's drug activity with the residence, namely, the statement of the confidential informant who told Detective Hill that Kris sold heroin from the house. Defendant argues that the confidential informant's information is immaterial because it is unsubstantiated. We agree with defendant.

■   ORS 133.545(4) provides, in part, that "[i]f an affidavit is based in whole or in part on hearsay, the affiant shall set forth facts bearing on any unnamed informant's reliability and shall disclose, as far as possible, the means by which the information was obtained." Without establishing the basis for the informant's knowledge, the issuing magistrate has no basis for assigning any weight to it. As a result, "[i]f

the affidavit provides no facts for evaluating the basis of the informant's knowledge, then the informant's statements must be stricken from the affidavit." *State v. Cotter/Ray*, 125 Or App 210, 212, 864 P2d 875 (1993); *see also State v. Russell*, 122 Or App 261, 266, 857 P2d 220 (1993).

In this case, Goodman's affidavit is based in part on hearsay—indeed, double hearsay. It reports what Detective Hill told him about what a confidential informant in turn had told Hill about Kris's drug activity at the house. There is no explanation as to how the confidential informant came upon that information. There is no way to tell from the affidavit whether the informant obtained that information from personal observation or from further layers of hearsay. Accordingly, in reviewing the adequacy of Goodman's affidavit, we do not consider that information.

Goodman's affidavit also reports that, eight months before he prepared his affidavit, he had observed defendant, Kris, and Padua fleeing the house with, according to Padua, an unspecified quantity of heroin. We also know that, eight months later, Goodman arrested Kris at the house and that Kris had in his possession "more than a user amount" of heroin. Goodman stated in his affidavit that persons involved in selling controlled substances "frequently keep records" of their drug transactions and "often store and keep stolen property in their possession."

Defendant argues that Goodman's observations eight months earlier are too stale to carry weight, while the officer's statements about his training and experience are too vague to provide the requisite nexus to defendant's house. We disagree.

As we explained in *Castro*, "[w]hether information has become 'stale' by the passage of time depends on the character of the crime and the nature of the thing to be seized." 194 Or App at 117. We explained that, for example, when there is evidence of a continuing drug operation, evidence that is as much as two years old may be relevant, as long as the older information is "refreshed with more recent information that provide[s] a basis for concluding that the criminal activity continued *at the stated location.*" *Id.* at 118 (emphasis in original).

In this case, Goodman's affidavit states that there was at least some sort of drug activity at the house eight months earlier and that, the day before he prepared his affidavit, there continued to be drug activity, Kris having been arrested while carrying "more than a user amount" of heroin. Thus, information connecting drug activity and the house eight months earlier was "refreshed" with similar information eight months later.

As for Goodman's training and experience, we note that the affidavit indeed is not as specific as it could be. It states that persons who deal in drugs often "transport the substances from one location to another often concealing the substances [on] their person and in their vehicles." The affidavit says nothing about keeping drugs at home. It does, however, state that persons who deal in drugs often "take stolen property as payment for controlled substances and often store and keep stolen property in their possession." Similarly, it says that people involved in drug activity often "keep records" of their drug transactions. It is true that the affidavit does not specify *where* such people keep their stolen property or their records. In particular, it does not say that they keep such items in their homes. But we are required not to read affidavits in such a technical fashion. *Villagran*, 294 Or at 408. It is not unreasonable to assume that the officer, in saying that people who deal in drugs "store and keep" certain items, do so at their homes, particularly in light of the fact that the only place the warrant seeks authority to search is defendant's and Kris's home.[1]

Thus, Goodman's affidavit establishes that drug activity of some sort had occurred *at the house* months earlier and as recently as the day before. Moreover, Goodman's affidavit establishes that drug dealers keep evidence of their crimes at their homes. We conclude that the remaining information in Goodman's affidavit is sufficient to establish probable cause.

---

[1] No question is raised on appeal about whether statements in the affidavit that drug-related evidence is "often" found at the residence of someone engaged in the distribution of controlled substances are sufficient to establish that it is *probable* that such evidence will be found at the residence to searched. We therefore do not consider that question. *See State v. Harper*, 197 Or App 221, 229 n 3, 105 P3d 883 (2005).

Our opinion in *Wilson* is not to the contrary. In that case, the affidavit reported only that the defendant attempted to sell an unspecified quantity of drugs at a location *other than his house* and at an unknown time. We concluded that, in those circumstances, an officer's statement that people who deal drugs keep evidence of crime at home was insufficient to establish a nexus to the defendant's home. We stated that "[t]he officer's expertise was simply too 'unconnected to objective facts derived from other sources' to provide probable cause to search [the] defendant's residence." *Wilson*, 178 Or App at 172. In contrast, in this case, the officer's expertise is connected with objective facts establishing that drug activity occurred at defendant's house.

Affirmed.