Argued and submitted October 31, 2011, convictions on Counts 2 through 8 and allowance of forfeiture in Count 9 reversed and remanded; otherwise affirmed January 16, 2013

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## JEFFREY DAVID MILLER,
*Defendant-Appellant.*

Jackson County Circuit Court
084664FE; A145566

295 P3d 158

Kali Montague, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Jamie Contreras, Assistant Attorney General, argued the cause for respondent. On the brief were John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Katherine H. Waldo, Senior Assistant Attorney General.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Duncan, Judge.

HASELTON, C. J.

## HASELTON, C. J.

Defendant appeals a judgment of conviction for three counts of delivery of methamphetamine (Counts 2 to 4) and one count each of possession of methamphetamine (Count 5), possession of marijuana (Count 6), possession of a controlled substance in Schedule II (Count 7), and possession of a controlled substance in Schedule I (Count 8). In addition, that judgment "[a]llowed" criminal forfeiture (Count 9).[1] On appeal, defendant contends that the trial court erred in denying his request for self-representation. Defendant further contends that the trial court erred in denying his motion to suppress evidence obtained during a warranted search of his residence and vehicle because the affidavit in support of the warrant was insufficient in certain respects. As amplified below, we conclude that the trial court erred with respect to the preclusion of self-representation, which requires an omnibus reversal and remand as to all counts, except Count 1 on which defendant was acquitted. Further, for purposes of guidance on remand, we conclude that the trial court erred, in part, in denying suppression— and, specifically, erred in denying suppression of evidence obtained from defendant's residence, but did not so err with respect to evidence obtained from defendant's vehicle.

As we explained in *State v. Duarte / Knull-Dunagan*, 237 Or App 13, 21-22, 238 P3d 411, *rev den*, 349 Or 370 (2010), "when a defendant seeks to suppress evidence from a search authorized by warrant, contending that the information in the predicate warrant did not establish probable cause," our review "function is limited to determining whether, given the uncontroverted facts in the affidavit and reasonably derived inferences, the issuing magistrate reasonably 'could have concluded that the affidavit (excluding the excised parts) established probable cause to search * * *.'" (Omission in *Duarte / Knull-Dunagan*) (quoting *State v. Castilleja*, 345 Or 255, 265, 192 P3d 1283, *adh'd to on recons*, 345 Or 473, 198 P3d 937 (2008)). In exercising that function, we view the predicate affidavit "in a commonsense, nontechnical and realistic fashion" with "doubtful cases * * * to be resolved

---

[1] Defendant was acquitted of a single count of unlawful manufacture of methamphetamine (Count 1).

by deferring to an issuing magistrate's determination of probable cause." *State v. Wilson*, 178 Or App 163, 167, 35 P3d 1111 (2001) (internal quotation marks omitted). Consistently with those principles, we state the content of the affidavit on which the search warrant was predicated.

On November 6, 2008, Medford Police Department Detective Hatten executed an affidavit in support of a warrant to search defendant, his 2001 Hyundai sedan, and his residence for "evidence of the possession, manufacture, and delivery of the controlled substance methamphetamine."

Hatten began by averring that defendant's "residence" was "at 1844 West 8th Street #3." He noted that defendant had been convicted in 1977, 1999, and 2000 of drug-related offenses and referenced out-of-state arrests as well.

Hatten then recounted the facts surrounding three controlled drug buys. The first two controlled buys occurred on separate occasions, within the two weeks preceding the request for the warrant, at an undisclosed location in Jackson County. Specifically, a confidential reliable informant (CRI) purchased "a small amount of methamphetamine from [defendant] through an [unnamed] unwitting informant [(UI)]." According to Hatten, before both controlled buys, he and two other detectives gave the CRI "money with recorded serial numbers and a radio transmitter" and searched "the CRI's person and vehicle for controlled substances and unaccounted for money" but found none. The detectives observed the CRI pick up and eventually drop off the UI at another location. At that point, the detectives maintained surveillance on both the UI and CRI. They observed defendant—who they identified "through a booking photo"— arrive "in his black 2001 Hyundai * * * and contact the [UI]."[2] Thereafter, the UI returned to the CRI's location and gave the CRI "the purchased methamphetamine." The detectives then observed the CRI drop off the UI and followed the CRI to a designated meeting site. There, they retrieved

---

[2] Hatten stated that "a computer registration check" on the Hyundai sedan "return[ed] to [defendant]." Further, Hatten stated that, within the week before the warrant issued, he had "observed [defendant's] Hyundai parked in the apartment complex in front of the 1844 section."

the purchased substance, which field-tested positive for methamphetamine. The officers again searched "the CRI's person and vehicle for additional controlled substances and unaccounted for money" but found none.

The third controlled buy occurred within 72 hours before Hatten's request for the warrant. Again, the CRI "purchased a small amount of methamphetamine from [defendant] through an unwitting informant" at an undisclosed location. In general, the circumstances of the third controlled buy were similar to those of the first two. However, there were two significant distinctions.

First, before the controlled buy, two officers "set up surveillance on [defendant's] residence at 1844 West 8th Street #3" and "observed [defendant's] black Hyundai sedan * * * parked in the apartment complex driveway in front of the 1844 section." The officers observed defendant—whom they identified through a booking photo—leave "apartment #3" and "walk directly to his black Hyundai sedan." The officers followed defendant to the location where he met with the UI. After the controlled buy, the officers followed defendant "back to his residence at 1844 West 8th Street."

Second, Hatten indicated that the CRI recounted two specific statements that the UI had made to him, attendant to the controlled buy, that are pertinent to the issues on appeal. Specifically, Hatten averred that the CRI

> "told us that he/she asked the [UI] after the controlled buy if the CRI could purchase at least one-quarter ounce of methamphetamine from the same drug source that the [UI] had just got the methamphetamine from within the next couple of days. The CRI stated to me that the [UI] told the CRI *that would be no problem.* The CRI stated to me that the [UI] told the CRI that *they could purchase anything they wanted through the drug source identified as being [defendant]."*

(Emphasis added.) Based on his "training and experience," Hatten explained that "one-quarter ounce of methamphetamine is more than a person would consume in a seventy-two hour period" and that "one-quarter ounce of methamphetamine is [a] dealer amount of methamphetamine

that is commonly broken down into smaller amount[s] of methamphetamine to be sold [to] customers."

Finally, in the balance of his affidavit, Hatten included other averments based on his training and experience in drug-enforcement efforts. In general, Hatten referred to his 21 years of experience in law enforcement, his work with the "Jackson County Narcotics Enforcement Team (JACNET)," and his "special training in controlled substance investigations."

However, his averments primarily pertained to common practices of those who possess and sell controlled substances. In particular, Hatten stated:

"I also know that, based upon my training and experience, persons who possess cocaine [sic], possess it both for their own use and to sell. Persons who sell cocaine [sic] will often keep records so they can keep track of their profits and whom they sell to. These records are often hand written by the suspect or suspects, persons who possess and sell cocaine [sic] will also have packaging material, cutting agents and scales used to package controlled substances.
* * *

"* * * * *

"I know from my training and experience that people often keep controlled substances, scales, packaging material, cutting agents and currency from drug sales in a safe or other type locking container."

Hatten further described how vehicles are used by those involved in drug transactions. Specifically, he explained:

"Items of value including drugs, currency, records of sales, or purchase of drugs are often kept in automobiles by persons trafficking in control[led] substances. This enables the trafficker to quickly depart a residence and ensure that the necessary tools are readily accessible for the purpose of selling or purchasing drugs. I have often seized such items from vehicles seized at the scene of a residence being searched for drugs."

As noted, based on Hatten's affidavit, the court issued a search warrant on November 6, which was executed

later the same day, yielding inculpatory evidence in both defendant's residence and the vehicle. Defendant was charged with a variety of drug-related offenses.

Thereafter, he filed a motion to suppress the evidence obtained during the warranted search, as well as derivative evidence, on the ground that the affidavit in support of the warrant "lacked probable cause."[3] In support of that contention, and as pertinent to the issues on appeal, defendant pointed to two deficiencies in the affidavit.

First, defendant pointed to two of the UI's statements that were included in the affidavit—*viz.*, (1) that it "would be no problem" to obtain at least one-quarter ounce of methamphetamine from defendant within a couple of days after the third controlled buy; and (2) that the CRI and UI "could purchase anything they wanted through the drug source identified as being [defendant]." Defendant contended that the affidavit did not demonstrate that those two statements were credible or reliable or the UI's basis of knowledge for them and, for that reason, the statements could not be "relied upon when reviewing the Affidavit for probable cause."

Second, defendant asserted that the affidavit was insufficient to "establish[] probable cause to believe that controlled substances, particularly methamphetamine and related paraphernalia would be found in [defendant's] residence." In particular, defendant contended that "there

---

[3] In his motion, defendant, relying on ORS 133.693(2), also sought to controvert the affidavit, contending that "Hatten omitted at least three pieces of material information that directly impact the sufficiency of the remaining evidence that * * * Hatten relies upon to establish probable cause for the search warrant." However, contrary to the requirements of ORS 133.693(2), defendant did not submit an affidavit to substantiate his contention. ORS 133.693(2) ("If the evidence sought to be suppressed was seized by authority of a search warrant, the moving party shall be allowed to contest the good faith, accuracy and truthfulness of the affiant as to the evidence presented before the issuing authority only upon supplementary motion, *supported by affidavit, setting forth substantial basis for questioning such good faith, accuracy and truthfulness.*" (Emphasis added.)).

In denying defendant's motion to suppress, the trial court did not expressly address defendant's controverting contentions concerning the purported omissions from the affidavit. Nevertheless, because defendant failed to provide evidentiary support for those contentions as prescribed by ORS 133.693(2), they fail as a matter of law. Consequently, for purposes of our review, the facts recited in Hatten's affidavit are uncontroverted.

are no references to any illegal drug activity taking place <u>at</u> [defendant's] residence located at 1844 W. 8th Street, #3, yet this was the focal point of the search pursuant to a warrant." (Underscoring in original.)

The trial court denied defendant's motion to suppress, reasoning that the affidavit established the knowledge and reliability of the UI and probable cause to search. Approximately seven months later, after a couple of continuances, the case was scheduled for trial.

As noted, the threshold issue on appeal pertains to the purported denial of self-representation. The circumstances pertaining to that issue are as follows.

At a hearing the afternoon before the trial was scheduled to begin, defendant's counsel informed the court that defendant sought to hire another attorney, Roloff, who, according to defendant, was unavailable for trial the next day. The court expressed concern about the length of time that the case had been pending as well as the numerous set-overs and told defendant, "So you either go with Mr. Roloff and he is ready tomorrow, or you stick with [current defense counsel] and she goes, or you represent yourself?" At that point, the court reiterated its concerns about the need to resolve the case, and defendant explained the reasons that he had sought to hire Roloff. Ultimately, the hearing concluded with the following exchange between the court and defendant:

"THE COURT: Trial tomorrow. Be back here at [9]:00 a.m. either with Mr. Roloff, [current defense counsel], or yourself.

"[DEFENDANT]: Okay."

The following morning, defendant placed on the record his objections to his current attorney, who then moved to withdraw. At that point, the following colloquy ensued between the court and defendant:

"THE COURT: All right, thank you Counsel. [Counsel] was appointed almost a year-and-a-half ago. This matter has been set—this is the seventh setting of this trial. I have absolutely no intention of continuing the matter again. [Counsel] is an attorney with great experience and

has handled a great many of these matters. The motion to suppress has been already dealt with by Counsel and the Court has already ruled on that motion. The fact that a moment ago you blurted out that you objected to the State asking the Court to strike enhancement factors shows me how little you know about these matters and that you're better in the hands of an experienced attorney. So, initial withdrawal is denied, and any effort you are making by way of this argument for either a continuance or to represent yourself are both denied in your own best interest.

"[DEFENDANT]:   *I can't represent myself?*

"THE COURT:   No, I'm going to keep [current counsel] on the case to represent you and that's in your best interest. So we're going to proceed as soon as we have a jury here."

(Emphasis added.)

Ultimately, a jury convicted defendant of the drug offenses previously noted. Defendant appeals.

On appeal, defendant raises two assignments of error. First, defendant contends that the trial court erred in denying his request for self-representation on the morning of trial. Specifically, defendant asserts that the trial court violated his rights to self-representation under Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution[4] by summarily denying his request because he had "made an objection during a pre-trial matter that was adverse to his interests."

Second, defendant asserts that the trial court erred in denying his motion to suppress, because the affidavit in support of the warrant was insufficient to establish probable cause for the warrant to issue. In support of that contention, he reprises the contentions that he raised in the trial court concerning the deficiencies in the affidavit.

We begin with defendant's contention that the court erred in denying his request for self-representation. As we explained in *State v. Blanchard*, 236 Or App 472,

---

[4] Article I, section 11, provides, in part, that, "[i]n all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel[.]" The Sixth Amendment provides, in part, that, "[i]n all criminal prosecutions, the accused shall * * * have the Assistance of Counsel for his defence."

475, 236 P3d 845 (2010), under both the state and federal constitutions,

> "[a] defendant's right to counsel includes a right to self-representation. *State v. Verna*, 9 Or App 620, 624, 498 P2d 793 (1972) ('A defendant in a criminal case has the constitutional right not only to be represented by counsel, but also, if he so elects, to represent himself.'); *see also Faretta v. California*, 422 US 806, 819, 95 S Ct 2525, 45 L Ed 2d 562 (1975) ('The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense.')."

That right, however, is not absolute. "When a defendant asks to represent himself, the court must determine, on the record, whether his decision is an intelligent and understanding one." *State v. Davis*, 110 Or App 358, 360, 822 P2d 736 (1991). Further, the court must "determine whether granting the defendant's request would disrupt the judicial process." *Id.* (citing *Verna*, 9 Or App at 627).

Here, during the hearing the afternoon before defendant's trial was scheduled to begin, the trial court clearly alerted defendant that the trial would occur the following morning and that defendant had to make one of three choices—that is, (1) proceed with current defense counsel, (2) proceed with his putative substitute counsel, Roloff, or (3) represent himself. On the morning of trial, defendant arrived without Roloff and expressed his concerns about proceeding with his current defense counsel, who then moved to withdraw. The court denied defense counsel's motion and told defendant, "[A]ny effort you are making by way of this argument for either a continuance or to represent yourself are both denied in your own best interest." In response, the following exchange occurred:

> "[DEFENDANT]: *I can't represent myself?*
>
> "THE COURT: No, I'm going to keep [current counsel] on the case to represent you and *that's in your best interest.* So we're going to proceed as soon as we have a jury here."

(Emphasis added.)

That exchange demonstrates that—notwithstanding the state's appellate contentions to the contrary—the trial court understood that defendant sought to invoke his right of self-representation. Faced with that invocation, the trial court, rather than establishing that defendant's waiver was knowing and intelligent, summarily denied defendant's request *solely* because it was in his "best interest" to continue to be represented by his current defense counsel. Significantly, the court in precluding self-representation, did not refer to, or purport to do so based on, any anticipated "disrupt[ion of] the judicial process." *Davis*, 110 Or App at 360. That was error. Accordingly, we must reverse and remand for a new trial as to Counts 2 through 9.

However, our disposition in that regard does not obviate the need to address defendant's other assignment of error pertaining to the trial court's denial of his motion to suppress evidence seized during a warranted search of his residence and vehicle. Obviously, the admissibility of that inculpatory evidence will be central to any proceedings on remand. Accordingly, we turn to defendant's contentions concerning the sufficiency of the affidavit in support of the warrant.

We begin with defendant's contention that the affidavit failed to establish the basis of knowledge for two of the UI's statements. ORS 133.545(4) provides, in part, that, "[i]f an affidavit is based in whole or in part on hearsay, the affiant shall set forth facts bearing on any unnamed informant's reliability and shall disclose, as far as possible, the means by which the information was obtained." As we explained in *State v. Keerins*, 197 Or App 428, 433-34, 106 P3d 166, *rev den*, 338 Or 681 (2005), "[w]ithout establishing the basis for the informant's knowledge, the issuing magistrate has no basis for assigning any weight to it. As a result, if the affidavit provides no facts for evaluating the basis of the informant's knowledge, then the informant's statements must be stricken from the affidavit." (Brackets and internal quotation marks omitted.)

Here, Hatten's affidavit is based on double hearsay, in that it recounts (a) what the CRI told Hatten about (b) what the UI had said to the CRI. Under such circumstances, "each

level of hearsay must be examined to determine if the basis of knowledge" requirement is satisfied. *State v. Kreutzer*, 138 Or App 306, 314, 909 P2d 175 (1995).

At most, the affidavit in this case establishes that the UI purchased "a small amount" of methamphetamine from defendant during each of three controlled drug buys.[5] Even if the UI had an ongoing business relationship with defendant, as the state asserts, the affidavit demonstrates nothing other than a relationship in which the UI purchased small amounts of methamphetamine—as opposed to larger amounts, such as a quarter of an ounce, or substances other than methamphetamine. Thus, there is simply nothing in the affidavit to indicate—or from which to infer—that the UI's statements that he could obtain at least one-quarter ounce of methamphetamine from defendant or could obtain substances other than methamphetamine from him were based on the UI's *personal knowledge,* as opposed to speculation on the UI's part. Accordingly, as defendant asserts, those statements cannot substantiate probable cause.

Defendant's remaining contention is that the affidavit failed to establish a nexus between drug activity and his residence. In general terms, defendant contends that the facts as shown in the affidavit did not establish that it was more likely than not that the items specified in the warrant would be found in his residence. *See Wilson*, 178 Or App at 166-67 ("To be sufficient, an affidavit in support of a warrant must permit a conclusion by a neutral and detached magistrate that the items specified in the warrant will probably be found in a specified place to be searched."); *State v. Castro*, 194 Or App 109, 115, 93 P3d 815 (2004) (explaining that the probability standard requires that the information in the affidavit "must be such that a reasonable person could conclude that it is more likely than not that the objects of the search will be found *at the specified location*" (emphasis in original)). Further, defendant notes that, although Hatten "reiterated his training and experience

---

[5] The affidavit is less than clear as to whether the UI who was involved in the first two controlled buys was the same UI involved in the third buy. Nevertheless, for purposes of our analysis, we assume that it can be reasonably inferred that the same UI was involved in all three controlled buys.

and further concluded that[,] based on that expertise, drug-related evidence would be found in defendant's car," he "never specifically connects his training and experience to defendant's home." *See State v. Goodman*, 328 Or 318, 328, 975 P2d 458 (1999) ("Facts derived from training and experience may contribute [the] necessary factual nexus in a determination of probable cause.").

Two cases inform our analysis of that issue—*Wilson*, 178 Or App 163, and *Keerins*, 197 Or App 428. In *Wilson*, we held that the trial court properly granted the defendants' motion to suppress on the ground that the warrant authorizing the search of their residence was not supported by probable cause. 178 Or App at 165. In so holding, we rejected the state's argument that the trial court had "unduly discounted" the officer's "general training and experience and his knowledge that people involved in drug activity generally have evidence of that activity on their property and in their residences." *Id.* at 171. Noting that "the weight to be given to [training and experience] representations depends on the totality of the facts contained in the affidavit[,]" *id.*, we agreed with the trial court that

"the facts in the affidavit in this case, as controverted, were simply too weak to be shored up by the officer's general training and experience. Again, the affidavit described a single sale of an unknown quantity of methamphetamine that occurred at some undisclosed time at a location other than defendants' residence. Nothing corroborated [one of the] defendant['s] * * * vague statement about having 'lots' of methamphetamine to sell. The officer's expertise was simply too unconnected to objective facts derived from other sources to provide probable cause to search defendants' residence."

*Id.* at 171-72 (internal quotation marks omitted).

By contrast, in *Keerins*, we held that the trial court properly denied the defendant's motion to suppress evidence obtained from the search of his residence. 197 Or App at 430. There, the defendant contended, *inter alia*, that "the officer's statements about his training and experience [were] too vague to provide the requisite nexus to defendant's house." *Id.* at 434.

In rejecting the defendant's contention, we explained that the officer's training and experience averments were not "as specific" as they could have been and that "[t]he affidavit says nothing about keeping drugs at home." *Id.* at 435. Nevertheless, we ultimately stated that "[i]t is not unreasonable to assume that the officer, in saying that people who deal in drugs 'store and keep' certain items, do so at their homes, particularly in light of the fact that the only place the warrant seeks authority to search is [the] defendant's and [his brother's] home." *Id.* In other words, we reasoned that the officer's averment that people who deal in drugs store items, in conjunction with his request to search only the defendant's home, permitted a reasonable inference that the evidence sought in the warrant would be found in the defendant's home. Further, in distinguishing *Wilson*, we explained that "the officer's expertise [was] connected with objective facts establishing that drug activity occurred at [the] defendant's house." *Id.* at 436.

Ultimately, our conclusion in *Keerins* that the affidavit established probable cause to search the defendant's residence was predicated on the conjunction of two propositions. First, "[the officer's] affidavit establishe[d] that drug activity of some sort had occurred *at the house* months earlier and as recently as the day before." *Id.* at 435 (emphasis in original). Second, "[the officer's] affidavit establishe[d] that drug dealers keep evidence of their crimes at their homes." *Id.*

Here, at most, Hatten's affidavit established that (1) defendant sold a small amount of methamphetamine to the UI during each of three controlled drug buys that occurred within two weeks of the issuance of the warrant at an undisclosed location; (2) defendant lived at the residence—that is, "1844 West 8th Street #3"; and (3) defendant drove directly from that residence to the third controlled buy and returned thereafter.

In addition, Hatten indicated that, based on his training and experience, "people often keep controlled substances, scales, packaging material, cutting agents and currency from drug sales in a safe or other type locking container" and "[i]tems of value including drugs,

currency, records of sales, or purchase of drugs are often kept in automobiles by persons trafficking in control[led] substances" because that "enables the trafficker to quickly depart a residence and ensure that the necessary tools are readily accessible for the purpose of selling or purchasing drugs." None of those generic averments, however, establishes that, where a person is using a *vehicle* to engage in drug transactions, evidence of possession, manufacturing, or distribution is likely to be located in his or her *residence*.

To be sure, this case differs from *Wilson* in that there was more than one controlled buy and defendant drove directly from his residence to the last of the three controlled buys and returned thereafter. Nevertheless, the circumstances here are similar to those in *Wilson*—and distinguishable from those in *Keerins*—in one fundamental, and ultimately dispositive, respect: The drug activity in this case did not occur at defendant's residence. Instead, each of the three controlled buys occurred at an undisclosed location other than defendant's residence.

Further, contrary to the state's assertion, Hatten's training and experience averments do not contribute the necessary factual nexus in this case. The gravamen of the state's contention is that, because Hatten stated that "drug dealers 'often keep records' and 'people often keep controlled substances, scales, packaging material, cutting agents and currency from drug sales in a safe or other type locking container[,]' " it is reasonable to infer "that the most probable place to find a safe containing those listed items is in a house." However, again, unlike the circumstances in *Keerins*, there is nothing in the affidavit, generally—or in Hatten's training and experience averments, specifically—permitting and supporting a nonspeculative inference to that effect.

In sum, the affidavit is insufficient to permit a magistrate reasonably to conclude that it is more likely than not that the evidence sought in the warrant would be found at defendant's residence. That conclusion, however, does not end our inquiry.

As noted, in addition to authorizing the search of defendant's residence, the warrant also authorized the search of his vehicle. Contrary to defendant's contention—and in contrast to the insufficiency with respect to defendant's residence—the affidavit was legally sufficient to permit a reasonable magistrate to determine that there was probable cause to search the vehicle. *See Duarte / Knull-Dunagan*, 237 Or App at 21-22 (stating standard). Specifically, in that regard, the affidavit sufficiently substantiates that defendant drove his black Hyundai sedan to each of the controlled drug buys and that, based on Hatten's training and experience, "[i]tems of value including drugs, currency, records of sales, or purchase of drugs are often kept in automobiles by persons trafficking in control[led] substances," which "enables the trafficker to quickly depart a residence and ensure that the necessary tools are readily accessible for the purpose of selling or purchasing drugs." The nexus to the vehicle is patent. Accordingly, the warranted search of the vehicle was lawful, and the fruits of that search were admissible.

Convictions on Counts 2 through 8 and allowance of forfeiture in Count 9 reversed and remanded; otherwise affirmed.