Argued and submitted June 20, reversed and remanded November 27, 2019

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DALE WILLIAM MARTINEAU,
*Defendant-Appellant.*

Washington County Circuit Court
16CR60377; A165409

455 P3d 1020

Defendant appeals from a judgment of conviction for robbery in the second degree, menacing, theft in the second degree, and unauthorized use of a vehicle. Defendant assigns error to the trial court's denial of his midtrial request to represent himself, arguing that the trial court did not weigh the relevant considerations as required by Article I, section 11, of the Oregon Constitution. The state concedes the error. The primary dispute in this case concerns the proper disposition. Defendant argues that remand for a new trial is appropriate, while the state argues that the Court of Appeals should remand to the trial court for the limited purpose of engaging in the proper analysis under Article I, section 11. *Held*: The Court of Appeals accepts the state's concession. The court adheres to its holding in *State v. Nyquist*, 293 Or App 502, 507, 527 P3d 1137 (2018), in which the court concluded that, when a trial court errs in denying a defendant's midtrial invocation of his Article I, section 11, right to self-representation, the proper remedy is to reverse and remand for a new trial.

Reversed and remanded.

Beth L. Roberts, Judge.

Daniel C. Bennett, Deputy Public Defender, argued the cause for appellant. Also on the opening brief and a supplemental brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services. Dale William Martineau filed a supplemental brief *pro se*.

Lauren P. Robertson, Assistant Attorney General, argued the cause for respondent. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Shorr, Judge.

SHORR, J.

Reversed and remanded.

**SHORR, J.**

Defendant appeals from a judgment of conviction for robbery in the second degree, menacing, theft in the second degree, and unauthorized use of a vehicle. Defendant assigns error to the trial court's denial of his midtrial request to represent himself.[1] For the reasons set forth below, we reverse and remand.

The relevant facts are undisputed and procedural in nature. Defendant was charged with seven counts of robbery, menacing, theft, unlawful use of a vehicle, and criminal mischief based on allegations that defendant drove away with an acquaintance's truck and, brandishing a gun, demanded money from the cash register at two different Fred Meyer locations. Defendant's case proceeded to a jury trial. Toward the end of the first day of trial, defendant asked the trial court if he could say something in the presence of the jury. The court told defendant no, and defendant attempted to speak again. The court interrupted defendant and instructed him, "Do not say anything." Once the jury left the courtroom, defendant explained that he wanted a new attorney because he was frustrated with his attorney, Taylor, refusing to cross-examine witnesses. The court told defendant that it would address defendant's concerns the next morning.

The following morning, defendant requested to terminate his counsel and represent himself. Defendant explained that he was "frustrated" with his attorney's failure to call witnesses. The trial court first informed defendant that, if he had another outburst in front of the jury, the court would hold defendant in contempt and have him removed from the proceedings. Then the court denied defendant's request. The court explained:

> "I also want to tell you that I'm not going to remove Mr. Taylor from your—as your counsel. And I want you to know that Mr. Taylor's a very, very good attorney; that

---

[1] Defendant also filed a supplemental brief in which he assigns error to the trial court's instruction to the jury that it could return a nonunanimous verdict. Because we reverse and remand for a new trial, we do not need to reach this issue.

he has done hundreds and hundreds of cases. And one of the hardest things for clients to understand is that lawyers have to make decisions about what they're doing. And another hard thing for lawyers to do is to not ask questions. But it's a really smart attorney that doesn't ask questions. In this particular case Mr. Taylor knows the evidence that's going to be presented and Ms. Martin knows the evidence that's going to be presented. And when he makes a choice not to ask questions of a witness, that's because he doesn't want the—the evidence to come out a second time."

Afterward, the jury was brought in, and the trial resumed.

Later that day, the trial court returned to the topic of defendant's request to represent himself. The court asked whether defendant was "still willing" to be represented by his attorney.

"DEFENDANT:  Yeah. Well, I mean, I really don't have no choice, right?

"THE COURT:   All right. All right. So we're going to go ahead and continue with [your attorney] representing you."

The trial resumed. Defendant was convicted on six counts and acquitted on one.

Defendant assigns error to the trial court's denial of his request to represent himself, arguing that the court failed to weigh, on the record, the relevant competing interests when denying his request. The state concedes the error, and we accept that concession.

A defendant's right to self-representation is found within Article I, section 11, of the Oregon Constitution.[2] When that right is invoked in the middle of a trial, however, it is not unqualified. *State v. Hightower*, 361 Or 412, 417, 393 P3d 224 (2017). "In particular, once a trial has begun, a number of interests other than the defendant's Article I, section 11, rights come into play." *Id.* at 417. The trial court has discretion to deny a defendant's midtrial request to waive counsel "if it has reason to conclude that granting the

---

[2] "In all criminal prosecutions, the accused shall have the right *** to be heard by himself and counsel[.]" Or Const, Art I, § 11.

motion would result in disruption of the proceedings." *Id.* at 418. The court must weigh the relevant competing interests on the record. *Id.* at 421. Those interests include a consideration of defendant's right to self-representation following a knowing and voluntary waiver and the court's "overriding obligation to ensure the fairness and integrity of the trial and its inherent authority to conduct proceedings in an orderly and expeditious manner." *Id.* at 417-18. Here, the court explained only that it was denying defendant's request and that, in the court's view, defendant had a "very, very good attorney." The court did not weigh any relevant considerations on the record. Accordingly, we accept the state's concession that the trial court erred.

The primary dispute in this case is the proper disposition. Defendant argues that remand for a new trial is appropriate. The state argues that we should remand to the trial court for the limited purpose of engaging in the proper weighing of interests. The state argues that, if the trial court's conclusion after conducting such analysis is that the court would have denied defendant's request to represent himself, the court should reinstate defendant's conviction.

At the outset, we rejected—and the state acknowledges that we rejected—the same argument in *State v. Nyquist*, 293 Or App 502, 507, 427 P3d 1137 (2018). In that case, the state had argued that, if we concluded that the trial court erred in denying the defendant's midtrial request to represent himself, "the trial court should have the ability to consider defendant's request for self-representation, to conduct proper balancing on the record, and to determine whether a new trial should be granted in light of its decision." *Id.* (internal quotation marks omitted). In rejecting that argument, we explained that, "[b]oth before and after the Supreme Court's decision in *Hightower*, we have held that a trial court's abuse of discretion in rejecting a defendant's request for self-representation requires reversal of the defendant's convictions and remand for a new trial." *Id.* (citing *State v. Ortega*, 286 Or App 673, 675, 399 P3d 470 (2017), and *State v. Miller*, 254 Or App 514, 524, 295 P3d 158 (2013)).

The state argues that our holding in *Nyquist*, which is a recent decision, was "plainly wrong."[3] *State v. Civil*, 283 Or App 395, 406, 388 P3d 1185 (2017) (explaining that the plainly wrong standard is "a rigorous standard grounded in presumptive fidelity to *stare decisis*"). The state first argues that we should disavow *Nyquist* because the cases that *Nyquist* relied on for its holding, *Miller* and *Ortega*, are distinguishable from the instant case (and from *Nyquist*) because *Miller* and *Ortega* both involved a defendant's pretrial request, whereas here (as in *Nyquist*), defendant's request came midtrial. Defendant agrees that *Miller* and *Ortega* are so distinguishable but argues that the distinction is irrelevant. We agree. The state makes no attempt to explain why a trial court's error in denying a defendant's pretrial request to represent himself should be remedied by a new trial, while an identical midtrial request should instead be remanded to the trial court to conduct the appropriate on-the-record balancing. We see no reason to conclude that *Nyquist* is plainly wrong on that basis.

The state also argues that *Nyquist* overlooked our previous holding in *State v. Williams*, 288 Or App 712, 407 P3d 898 (2017). In that case, the trial court denied a midtrial request by the defendant to represent himself. The state had argued that evidence of the defendant's disruptive behavior supported an implicit finding by the court that allowing the defendant to represent himself would disrupt the proceedings. *Id.* at 716. We rejected that argument, because "nothing in the record indicates that the court 'actually weighed the relevant competing interests involved.' *Hightower*, 361 Or at 421." *Id.* at 717. Accordingly, we reversed and remanded. The state now emphasizes our tag line in that case, in which we "reversed and remanded," arguing that we did not require a new trial. We note that our tag line did not resolve either way whether a new trial was necessary. *See State v. Sewell*, 225 Or App 296, 298, 201 P3d 918, *rev den*, 346 Or 258 (2009) ("[I]n the absence

---

[3] The state disputes that *Nyquist* stands for the proposition that, when a trial court fails to conduct the proper balancing analysis on the record, the only proper remedy is to remand for a new trial. The state, however, does not propose another plausible alternative interpretation of *Nyquist*, and frankly we disagree. *See, e.g.*, *State v. Martinez*, 297 Or App 64, 65, 438 P3d 481 (2019) (citing *Nyquist* for exactly that proposition).

of more specific instructions on remand, when we reverse and remand, we leave it to the trial court to determine and apply the appropriate procedure and analysis on remand."); *State v. Plueard*, 297 Or App 592, 596, 443 P3d 1195 (2019) ("Our use of the 'Reversed and remanded' tagline was sufficient to signal to the trial court that it would have authority, on remand from this court, to determine the nature of the proceedings that are necessary or appropriate on remand." (Internal quotation marks omitted.)).

The state urges us to adopt the approach when remanding certain evidentiary errors, in which we explicitly leave to the trial court on remand to reweigh the evidence and determine whether or not a new trial is necessary. *See State v. Baughman*, 361 Or 386, 411, 393 P3d 1132 (2017) ("The trial court will be in the best position to assess the need for a new trial after it has determined the purposes for which the challenged evidence is relevant under OEC 404(3), and, if argued, under OEC 404(4), and whether to admit it."). We view the trial court's task on remand in reanalyzing those evidentiary issues as fundamentally different from the trial court's task here.

We recently addressed a similar issue in *State v. McDougal*, 299 Or App 96, 449 P3d 919 (2019). There, the trial court had relied on facts not in evidence to find the defendant in contempt for violating a restraining order. The state conceded the error, and the dispute was regarding the proper disposition. As here, the state argued for a limited remand so that the trial court could reconsider its verdict relying only on facts in evidence. As we explained there:

> "A remand like the state seeks here would demand far more of the trial court [than in cases like *Baughman*]— more than we think is reasonable to ask. Such a remand would necessarily follow an error that was not harmless, *i.e.*, an error that we could not say had 'little likelihood' of affecting the verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). Thus, a trial court that was required to reconsider its verdict in a criminal case on remand would have to reassess all of the evidence admitted at trial (with the exception of any erroneously admitted), on a cold record, to determine—possibly years after the fact—whether it again was persuaded beyond a reasonable doubt that the

defendant was guilty of the crime charged, despite the error that occurred at the original trial. In our view, it is not realistic to ask the court to perform that *factfinding* task on remand in the context of determining whether the state has proved the defendant's guilt beyond a reasonable doubt."

*Id.* at 103 (emphasis in original). The state asks for a similar remand here. As in *McDougal*, the scenario presented here is fundamentally different from the type of situation presented in *Baughman*, in which the trial court was asked to reconsider a discrete evidentiary issue. A limited remand here would require the trial court to review a cold record, possibly years after the conclusion of the trial, and determine whether disruptions to those long-ago trial proceedings justified denying the defendant's Article I, section 11, right to self-representation. Such a remand, we think, is unrealistic and would likely demand more than is reasonable to ask of a trial court. In any event, we conclude that, at a minimum, the state's arguments do not persuade us that *Nyquist* was plainly wrong such that we should overrule that recent precedent.

An error in the judgment notwithstanding, an appellant generally must affirmatively demonstrate that an error was prejudicial in order for us to reverse a judgment. Or Const, Art VII (Amended), § 3; ORS 19.415(2); *former* ORS 138.230 (2015).[4] The harmless error doctrine "consists of a single inquiry: Is there little likelihood that the particular error affected the verdict?" *Davis*, 336 Or at 32.

Defendant does not advance an argument that the error here was prejudicial but, rather, contends that the type of error here is not subject to the harmless error doctrine. In making this argument, defendant relies on federal case law in the context of a defendant's United States Constitution Sixth Amendment right to self-representation and the apparent lack of harmless error analysis in at least one of our previous similar cases applying Oregon law. *See*

---

[4] *Former* ORS 138.230 (2015) was repealed by Oregon Laws 2017, chapter 529, section 26, for judgments entered on or after January 1, 2018. Or Laws 2017, ch 529, § 28. Because the judgment in this case was entered before that date, *former* ORS 138.230 (2015) is still applicable.

*State v. Blanchard*, 236 Or App 472, 476, 236 P3d 845 (2010) ("Under the Sixth Amendment, a court's denial of a defendant's right to be self-represented is 'structural error' that is not subject to harmless error analysis." (Quoting *United States v. Gonzalez-Lopez*, 548 US 140, 149-50, 126 S Ct 2557, 165 L Ed 2d 409 (2006); *McKaskle v. Wiggins*, 465 US 168, 177-78 n 8, 104 S Ct 944, 79 L Ed 2d 122 (1984).)); *Miller*, 254 Or App at 524 (reversing for a new trial without conducting a harmless error analysis). Defendant's assertion that the error here, as analyzed under Oregon law, is exempt from the harmless error doctrine is without merit. *See State v. Erb*, 256 Or App 416, 426-27, 300 P3d 270 (2013) (applying harmless error test in context of trial court's error in allowing the defendant to proceed without counsel).

Nevertheless, we cannot say that there is little likelihood that the error affected the verdict. As defendant explained to the trial court, his concern with his attorney stemmed from his attorney's refusal to call certain witnesses, including identification witnesses, whom defendant considered to be "vital" to his defense. The court believed that defendant's counsel had strategic reasons for not calling those witnesses when it denied defendant's request. Regardless of whether defendant's choice or his attorney's was better, we cannot say that the court's error would have had little effect on the verdict had defendant called different witnesses and pursued his own trial strategy. "Where we are unable to determine what the outcome of a case would have been if the defendant had been represented by counsel instead of proceeding without counsel, the error is not harmless." *Erb*, 256 Or App at 427 (internal quotation marks and citation omitted).

For the reasons above, we adhere to *Nyquist* and conclude that the appropriate remedy in this circumstance is to reverse and remand for a new trial.

Reversed and remanded.